540 So.2d 35 (1989)
W.A. PAYNE, Jr.
v.
RAIN FOREST NURSERIES, INC.
No. 58319.
Supreme Court of Mississippi.
March 8, 1989.
Carey R. Varnado, Easterling & Varnado, Hattiesburg, for appellant.
Lawrence C. Gunn, Jr., Hattiesburg, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This action has been brought by an occasional retail customer of a wholesale nursery business for personal injuries he sustained late on a June afternoon while inspecting plants for possible purchase. The plaintiff leaned against a post and dislodged a heating unit which fell on him and injured him. The case turns, first, on whether there is evidence that plaintiff entered the premises after the close of business on the day in question and was thus a trespasser and, second, on whether the Circuit Court erroneously instructed the jury that, if defendant were a wholesaler, plaintiff could not recover.
We hold that the evidence created a factual issue on the first point and find no error in submission of the status question to the jury. On the second, we hold that the Circuit Court erred and reverse and remand for a new trial.

*36 II.
Rain Forest Nurseries, Inc. (Rain Forest) is a Mississippi corporation with its principal place of business in Hattiesburg, Mississippi. The owners of Rain Forest Nurseries are Gary M. Nieman and Suzanne Nieman, husband and wife. Rain Forest commenced business in 1975. The primary business of Rain Forest is the sale of cut flowers and decorative plants to florists. A large sign at the entrance to the company's facilities reads "Rain Forest Nurseries, Inc.  Hattiesburg, Ms.  Wholesale Only".
Occasionally, Rain Forest is approached by members of the general public for the purpose of purchasing plants at its greenhouse facilities. The owners and employees of Rain Forest varied in their estimates of the frequency of retail sales  from one or two per month to a half dozen per month. Rain Forest engages in no advertising.
By his own account, W.A. Payne, Jr., Plaintiff below and Appellant here, had been an occasional visitor to Rain Forest's place of business, making approximately five visits in the year preceding the date of his injury, June 22, 1982. In fact, five days before the accident Payne had visited the nursery and purchased over $50.00 in house plants.
On the date of the accident, June 22, 1982, Payne visited Rain Forest sometime in the mid-afternoon but did not make any purchases. His mother had expressed an interest in purchasing some house plants, so Payne returned with his mother and ten-year-old son later that day  sometime around 4:30 p.m. When the group reached the entrance to the nursery, they discovered that the gate to the facility was closed. Payne's son got out of the truck and opened the gate, allowing Payne's pickup truck to go through. The boy then shut the gate behind the truck as there was a cow grazing nearby. Payne drove his pickup truck to a parking area near the building housing the office of the nursery. After having inspected the plants in four or five of the greenhouses, Payne and his group had yet to encounter any employees of the nursery.
After approximately forty minutes had elapsed, Payne had his unfortunate encounter with the heater. While standing in one of the aisles of the greenhouse, Payne reached up and put his hand on a metal pipe. He stated that he did not apply any lateral pressure against the pipe. As he stood in the aisle he heard a noise that he described as the "sliding of steel against steel". When he looked up to observe the source of the noise, a gas-fired heater (approximately three feet square) fell striking him in the side of the face. The blow rendered him unconscious for a few minutes and caused the personal injuries for which he has brought this suit.
Suzanne Nieman, co-owner of Rain Forest, testified that on the day in question, after completing her work at the office portion of the Rain Forest facilities, she left at around 4:30 p.m. As is her habit, she closed the chain link gate at the entrance to the property. Because her husband was still making deliveries and would be returning to the facility to retrieve his car, Suzanne looped the securing chain around the gate but did not latch the lock. Later that afternoon as Suzanne happened to drive past the entrance, she observed that the gate was standing open so she stopped and re-secured it.
At the close of trial the jury returned a verdict in favor of the defendant nursery and Payne has perfected this appeal.

III.
Payne maintains that, because the jury was allowed to consider his status on the property to be that of a trespasser or licensee, when in fact he was an invitee, the jury verdict must be set aside. Payne points to the undisputed evidence that retail sales in fact occurred in the Rain Forest greenhouses and claims that the jury should have been instructed that his status at the time of the accident was that of an invitee, thus dictating Rain Forest's standard of care.
Rain Forest responds that since it does not hold the greenhouses open to the public *37 as a general matter or advertise for retail sales, together with the evidence that Payne and his group were on the property after hours, the defense created a jury question as to his status at the time of the accident.
In cases such as that before the Court today, where a litigant seeks to attack a jury verdict, our scope of review is as familiar as it is limited.
... [W]hen a trial court, or the Supreme Court . .. considers such a motion [for directed verdict or judgment notwithstanding the verdict] it must do so `in the light most favorable to the party opposed to the motion.' ... The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelming in favor of the defendant (movant) that reasonable men and women could not have arrived at a verdict for the plaintiff (non-movant), granting the motion is required. The burden upon the movant in such cases is great, for if there is "substantial" evidence opposed to the motion, would allow reasonable and fair-minded men and women to reach differing conclusions, the motion must be denied.
Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988); Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975). A corollary principle is that, when we review such a case on appeal, we take the facts in the light most consistent with the theory of the prevailing party and the verdict.
Mississippi continues to adhere to the common law distinctions between the status of parties coming upon the property of another, the three familiar labels being a trespasser, a licensee and an invitee. Lucas v. B. Jones Ford Lincoln Mercury, 518 So.2d 646, 648 (Miss. 1988); Adams v. Fred's Dollar Store, 497 So.2d 1097, 1102 (Miss. 1986). The standard of care to which the landowner is held is largely a function of the plaintiff's status. As the court stated in Adams:
The status of a person on the property of another was stated succinctly in Hoffman v. Planters Gin Co., 358 So.2d 1008, 1011 (Miss. 1978), in the following language:
As to status, an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. Langford v. Mercurio, 254 Miss. 788, 183 So.2d 150 (1966); Wright v. Caffey, 239 Miss. 470, 123 So.2d 841 (1960). A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation or other right. Kelley v. Sportsmen's Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955).
A landowner owes a licensee [of whose presence he is unaware] the duty to refrain from willfully or wantonly injuring him. Astleford v. Milner Enterprises, 233 So.2d 524 (Miss. 1970); Marlon Investment Co. v. Conner, 246 Miss. 343, 149 So.2d 312 (1963); Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960). A landowner owes a trespasser the duty to refrain from willfully or wantonly injuring him. [citations omitted] ...
Adams, 497 So.2d at 1099-1100 (quoting Hughes v. Star Homes, Inc., 379 So.2d 301, 303-04 (Miss. 1980).
If the circumstances surrounding a person's entry onto or presence upon property are in dispute, then "the determination of which status a particular plaintiff holds can be a jury question". Adams, 497 So.2d at 1100; see also Hoffman v. Planters Gin Co., 358 So.2d 1008, 1012-13 (Miss. 1978). This is consistent with our general rule that a party to an action is entitled to have the jury instructed regarding any genuine issue of material fact, so long as there is credible evidence in the record from which the jury may have found the fact in favor of the requesting party. Graves v. Graves, 531 So.2d 817, 821 (Miss. 1988); Hill v. Dunaway, 487 So.2d 807, 809 *38 (Miss. 1986); Cotton v. Quinn, 245 So.2d 593, 594 (Miss. 1971). This precept would particularly apply in instances where the plaintiff was at one time an invitee but his actions arguably exceeded the scope on the invitation, thus relegating him to a different status.
The case of Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960), is illustrative. In Dry the plaintiff entered the defendant's service station for business purposes  to have a mechanic install a device on a truck. Since it was near closing time and the job could not be finished that day, Dry was granted permission to do the work himself on the premises. While Dry was so engaged, an employee of the service station ran over his foot with a car. In determining Dry to hold the status of licensee, the Court stated:
Possessors of premises have the duty to use reasonable care with reference to invitees on their business property. That duty is coextensive with the invitation. An inviter's duty and corresponding liability for breach of duty are measured and limited by the nature of the invitation held out to the invitee. If the latter goes beyond the bounds of his invitation ... he loses the status of invitee and the rights which accompany that state. Dry became a licensee.
238 Miss. at 101-02, 117 So.2d at 458. [Emphasis added]
On these facts, Payne enjoyed an implied invitation to return during business hours. The critical point is whether there is evidence in the record from which the jury may reasonably have found that Payne and his party entered the Rain Forest premises after the company had closed its operations for the business day of June 22, 1982. No one employed by or associated with Rain Forest had any knowledge that Payne and his party were on the premises, a fact Payne does not dispute.
Here we emphasize the testimony of Suzanne Nieman that she left the premises at around 4:30 p.m.  and that she was the last person to leave that day. Mrs. Nieman closed the gate upon leaving, and looped the securing chain around the gate. When this is coupled with the testimony of Payne, his mother and his son, all of whom said that the gate was closed when they arrived, we have found the evidentiary predicate for the conclusion that the Paynes entered the premises after business hours. If they did this, they were at best licensees on the premise without the knowledge of the owners and at worst trespassers. Adams v. Fred's Dollar Store, 497 So.2d 1097, 1102 (Miss. 1986). In any event, our law required that Rain Forest, under such circumstances  which we take as true  refrain only from wilfully and wantonly injuring Payne.

IV.
The conclusion that Rain Forest was entitled to have the status question submitted to the jury is but the first step in our inquiry. Having answered that question in the affirmative, our concern becomes whether the two status instructions requested by Rain Forest and submitted to the jury by the Circuit Court were sufficiently correct statements of the law that, when viewed with all of the instructions in the case, we may find no reversible error.
We begin with Jury Instruction D-5 which reads as follows:
If you believe by a preponderance of the evidence in this case that the plaintiff entered the premises of Rain Forest Nurseries, Inc., without any permission or invitation from them and that he went on the premises for a definite purpose of his own at his own convenience, then your verdict should be in favor of Rain Forest Nurseries, Inc.
We are told that the instruction largely tracks language found in Kelley v. Sportsmen's Speedway, 224 Miss. 632, 643, 80 So.2d 785, 790 (1955).[1]
*39 The instruction is not wholly apt. At the very least it should have been tied specifically to the point in time when Payne entered the Rain Forest premises on the afternoon of June 22. It should also have required the jury to find that Payne was on the premises without Rain Forest's knowledge. As explained above, there was evidence from which the jury may have resolved these points favorably to Rain Forest. Were such the case, Rain Forest was entitled to a verdict, for there is nothing in the record suggesting that Rain Forest was guilty of any wilful conduct causing or contributing to Payne's injuries.
On this appeal, Payne makes much of the fact that he had been a prior customer of Rain Forest and from this he had an implied invitation to return and purchase further plants. But this begs the question, which is whether Payne had any implied invitation to enter the premises after business hours. For if he did enter the premises at that time, he did so  on this record  "without any permission or invitation" and "for a definite purpose of his own at his own convenience."
Technically speaking and by reference to the facts of this case, Instruction D-5 contains no error of law; we only wish it had been worded more carefully. When we consider the fact that the jury was generously instructed on Payne's theory of the case, the deficiencies in Instruction D-5  which consist only of inapt wording  do not require reversal.[2]

V.

A.
The second instruction of which Payne here complains is more problematical. We refer to Jury Instruction D-6 which reads as follows:
In order for the plaintiff to recover any sum of money, he must prove by a preponderance of the evidence that he was invited, either expressly or impliedly, to enter the premises when he did. The nature of a wholesale business is not such that a general invitation to the general public to enter its place of business can be implied. One who sells wholesale, but makes occasional small retail sales without any special effort to attract retail trade, is not deemed to be making an implied invitation to customers to enter parts of the premises not ordinarily used in serving the customers.
If you believe by a preponderance of the evidence in this case that Rain Forest Nurseries, Inc., is a wholesale business, even though it may make occasional small retail sales, and if you believe by a preponderance of the evidence that Rain Forest does not make any special effort to retail trade, then you should decide that Rain Forest did not, simply by being in business, make an express or implied invitation to the plaintiff to enter the premises, and your verdict should be in favor of Rain Forest Nurseries, Inc.
This instruction, we are told, comes from one of the two generally available legal *40 encyclopedia, to be specific, from 62 Am.Jur.2d Premises Liability § 123 (1972). Any lawyer who employs Am.Jur.2d or C.J.S. as his sole source of a proposed jury instruction assumes the risk  which is considerable.
Insofar as we are aware, this Court has never considered whether the distinction between a wholesale business and a retail business would be of controlling significance in determining whether a plaintiff is an invitee, a licensee or a trespasser. Wholesalers certainly extend in law invitations to persons to come upon their business premises the same as retailers. If Rain Forest in fact strictly adhered to a no-retail-sales policy, prospective retail customers like Payne would not be invitees. On the facts of this case, however, Rain Forest impliedly invited Plaintiff Payne to return to his business and purchase plants  during regular business hours. In this setting, whether Rain Forest is primarily a wholesaler aids us little. Our concern is with the scope of the invitation extended, as Rain Forest's duty is co-extensive with that invitation. Dry v. Ford, 238 Miss. at 101-02, 117 So.2d at 458.
It may well be that, if Rain Forest was primarily a wholesale business, it did not "simply by being in business" invite Payne to enter the premises. But in this day and time when the former distinctions between wholesalers and retailers has in so many instances been functionally obliterated, these terms may only confuse and should be used with caution in jury instructions.
Of greater concern are the premises which, if found by the jury, may, according to Instruction D-6, have produced the bottom line: "and your verdict should be in favor of Rain Forest Nurseries, Inc." These premises as stated are: (1) Rain Forest is a wholesale business, though (2) it may make occasional retail sales; and that (3) Rain Forest did not simply by being in business invite Payne to enter the premises. The instruction is not tied to the time Payne entered the premises on the afternoon of June 22, nor is anything said about Rain Forest's lack of knowledge of Payne's presence. Nor is anything said of Rain Forest's duty of care. More important, this instruction wholly ignores the indisputable conclusion from the law and the facts that Rain Forest did impliedly invite Payne, a some time retail customer, to return and buy more plants. Looking at Instruction D-6 in isolation, but in the context of the record and the legal conclusions inferable therefrom, the finding by the jury of the premises stated in the instruction as a matter of law would not entitle Rain Forest to a verdict. Not only is Instruction D-6 awful from the point of draftsmanship, it is legally wrong.

B.
Instruction No. D-6 should not have been given. When faced with such a circumstance, however, on appellate review, we do not isolate the individual instruction attacked, but rather we read all of the instructions as a whole. Defects in specific instructions do not require reversal where all instructions taken as a whole fairly  although not perfectly  announce the applicable primary rules of law.[3]Allen v. Blanks, 384 So.2d 63, 65 (Miss. 1980). Where it may be fairly charged that one or more instructions may have been confusingly worded, we should not reverse if other instructions clear up the confusing points.[4]See Hutchins v. Page Contractors, *41 Inc., 513 So.2d 944, 945 (Miss. 1987); Byrd v. F-S Prestress, Inc., 464 So.2d 63, 66 (Miss. 1985); Akin v. Cowie, 405 So.2d 903, 907 (Miss. 1981); Nason v. Sanders, 227 So.2d 275, 277 (Miss. 1969). On the other hand, where we find two or more instructions in hopeless and substantive conflict with each other, we often reverse.
Instruction D-6 regarding the wholesale nature of Rain Forest's business is arguably misleading when considered in vacuo. It is downright wrong when applied to the facts of this case, for the finding of the three predicates there stated would not entitle Rain Forest to a verdict. When read in the context of all of the instructions relating to the plaintiff's status and the landowner's attendant duties of care, see, supra, footnote 2, the best that may be said of Instruction D-6 is that it is in hopeless and substantial conflict therewith.
We reverse and remand for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
BLASS, J., not participating.
NOTES
[1] Compare the pattern instruction defining a licensee:

A licensee is a person who is privileged to enter the property of another by invitation, permission, or consent of the person in control or possession of the property for the licensee's own purpose or benefit.
Mississippi Model Jury Instructions: Civil and Criminal § 38.02 (1977). A trespasser, of course, is one who has no such license.
[2] The Court submitted to the jury two invitee instructions at Payne's request. These are Instruction P-3, which reads as follows:

An invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner.
If you find from a preponderance of the evidence that the plaintiff in this case, Mr. Payne, went on the premises of Rain Forest Nurseries, Inc., as the result of an express or implied invitation by the defendant that he and other members of the general public enter the premises for the purpose of purchasing goods being sold by the defendant, then you must find that Mr. Payne was an invitee.
This is followed by Instruction P-4, which reads as follows:
If you find, from a preponderance of the evidence that the plaintiff, W.A. Payne, Jr., was an invitee of the premises, then the owner, occupant, or person in charge of the premises, such as Rain Forest Nurseries, owes to an invitee or business visitor on the premises the duty of exercising reasonable care to keep the premises in reasonably safe and suitable condition, or of warning the invitees or business visitors of hidden or concealed perils of which he knows or should know in the exercise of reasonable care.
In addition, Payne was granted Instruction P-6, a res ipsa loquitur instruction.
[3] There is a pattern instruction on this point which is customarily given by the circuit court. It reads:

You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole.
Mississippi Model Jury Instructions: Civil and Criminal § C. 01 (1977), quoted in Akin v. Cowie, 405 So.2d at 907 n. 1. Inexplicably, the pattern instruction was not given in this case. It is difficult to imagine a case where this instruction should not be given.
[4] The other instructions in the case include the following. Instruction No. P-1 advised the jury that it could find against the corporation, Rain Forest, if it found that some officer or employee of Rain Forest were negligent and that such negligence "proximately caused injury to the plaintiff." Instruction No. P-2 was the standard definition of negligence. Instruction Nos. P-4, discussed above, told the jury quite clearly that if Payne were on the premises pursuant to "an express or implied invitation" from Rain Forest, Payne should recover if it found Rain Forest negligent. Then Instruction P-6 allowed the jury to find for Payne on a res ipsa loquitur theory. Instruction No. D-2 told the jury it could find for Rain Forest if it found Payne to have been injured as "the result of a simple accident" and that Rain Forest "was not guilty of any negligence whatsoever." Instructions No. D-3 and D-4 further submitted to the jury the question of Rain Forest's negligence with D-4 concluding "unless the plaintiff has proven this [negligence] to you by a preponderance of the evidence, then your verdict should be in favor of Rain Forest Nurseries, Inc."