589 So.2d 1268 (1991)
Murray STRICKLAND and Redd Pest Control Co., Inc.
v.
Joyce Brown ROSSINI and the Federal Land Bank of Jackson.
No. 07-CA-59266.
Supreme Court of Mississippi.
November 13, 1991.
*1269 James H. Gabriel, John T. Wakeland, Pyle Dreher Mills & Woods, Jackson, for appellants.
Willard L. McIlwain, Jr., Jerome C. Hafter, Lake Tindall, Hunger & Thackston, Greenville, for appellees.
En Banc.

ON PETITION FOR REHEARING
PRATHER, Justice, for the Court:
This opinion in this case was originally released on December 12, 1990, written by a former member of this Court. The Petition for Rehearing has been heard by the present Court and is denied. However, the opinion of the Court is modified to read as follows:
This case comes to the Court on appeal from a Washington County Circuit Court jury verdict awarding the appellees compensatory and punitive damages totalling $163,000.00. The appellants have asserted several errors made in the trial court; however, this Court will address only those which require us to reverse the jury verdict and remand for a new trial on damages only. The issues which will be addressed are as follows:
THE LOWER COURT ERRED IN GRANTING JURY INSTRUCTION P-4
THE LOWER COURT ERRED IN GRANTING PLAINTIFF'S INSTRUCTION P-4 AND P-13
THE LOWER COURT ERRED IN GRANTING INSTRUCTION P-10
THE PROPRIETY OF INDEMNIFICATION
*1270 On April 16, 1987, Joyce Brown Rossini (hereinafter Rossini) filed a complaint in the Circuit Court of Washington County against Murray Strickland (Strickland), Redd Pest Control (Pest) and the Federal Land Bank Association (hereinafter Land Bank).[1] In this complaint she alleged, inter alia, that she entered a contract with Land Bank to purchase a home and that Land Bank provided to her a termite certificate showing the house to be free of termites. The only certificate that was provided to her came from Redd Pest Control and this certificate stated that the house had no visible evidence of infestation from wood destroying termites. The house was later found to have substantial pre-existing termite damage.
This complaint also asserted that Land Bank had breached its contract with Rossini, and Rossini complained that Redd and Strickland were liable for negligently representing that "there was no visible evidence of infestation from wood destroying insects" in its inspection of the home prior to her purchase. Rossini further alleged that Redd and Strickland were careless, reckless and in gross disregard of her rights, and that this lack of care also caused her to suffer mental anguish and emotional distress.
For the damage to the property Rossini claimed that she was entitled to $50,000 for repairs, $6,000 for the loss of use of her house, and $25,000 for her mental anguish. In addition to these damages Rossini requested $100,000 in punitive damages and reasonable attorney fees. In its answer to the complaint, Land Bank filed a cross-claim for indemnity against Redd & Strickland.
A trial on this matter was held on October 12 and 13, 1987. At the conclusion of the trial, the judge awarded Land Bank a judgment in indemnity against Redd and Strickland. The jury returned a verdict in Rossini's favor against Land Bank and awarded her $39,000. In addition, the jury entered a verdict in favor of Rossini against Redd and Strickland for $62,000 in actual damages, plus $62,000 for punitive damages. A judgment reflecting this verdict was entered on October 27, 1987.
Land Bank filed its Motion for JNOV on October 20, 1987. Redd and Strickland did the same on November 2, 1987. These motions were heard on February 18, 1988, and the trial court entered its order denying the motion on the same day. Redd Pest and Strickland now appeal to this Court for relief from the jury verdict.

I.

THE FACTS
In an attempt to escape the memories of her husband's death, Rossini with her two children moved from Lake Village, Arkansas, to Greenville, Mississippi, to begin anew.
Russell Black, a licensed realtor, was Land Bank's authorized representative to market certain properties in the Greenville area. One of the homes on his list included the home that is the subject of this litigation. Black first viewed this home in late 1985. This house had been vacant for some period of time and the pipes had burst during the winter which caused some water damage. When the water was turned on again, some of the rooms were flooded and needed repairs. During this period, Rossini developed an interest in the home.
Prior to executing the contract Rossini asked Black for a guarantee that the house would be free of termites. Although the contract was a standard form provided by the Veterans Administration, Black inserted the clause, "sellers will provide a termite certificate showing house to be free of termites." To comply with this added provision of the contract, Black called Redd Pest and asked them to perform a termite check and to provide a certificate as proof of that inspection.
On April 7, 1986, Strickland, a seventeen-year employee of Redd and a certified termite *1271 operator, inspected the house. During this investigation, he found no visible signs of termites. In conducting his inspection, Strickland looked on the outside of the house, in every room on the inside and the attic. The only thing he uncovered was a damp spot in the carport which could have possibly been susceptible to termites. Although wet areas require special inspection, Strickland only gave a visible inspection from the ground. After his inspection, Strickland filed his report and indicated that there were no inaccessible areas on the property. During his testimony at trial, however, Strickland told the jury that there were indeed inaccessible areas, but he did not include those on his report. This report is the typical report that Strickland uses while inspecting residences and issues to people buying and selling real estate.
Subsequent to Strickland's inspection, Black showed Rossini the house. Black told her that the house had been inspected for termites and the inspection revealed no termite damage. Although Black had the termite certificate with him, Rossini did not take a copy because she had not agreed to buy the house. Some testimony, however, indicated that she had been given this certificate on an earlier date because she needed it to file for her loan from the bank.
During this first look at the house, Black informed Rossini of the water damage. They also toured the attic and Rossini testified that she saw the "tunnels hanging then but [she] didn't know what they were. [She] didn't know that was a termite tunnel at that time or a tube, because [she] didn't know what a termite was." She had never seen a termite. She had no reason to inquire what it was that she saw because Black had told her the house was free of termites as it had been inspected for termites. Moreover, she thought it was dust because all attics have dust and insulation.
Black testified that he had been on the property between eight and ten times. He recalled showing the property to Rossini but could not remember if they viewed the attic. Although he is an entomologist, he did not see any evidence of termite damage. This testimony is undercut somewhat because Black also stated that he did not "know that [he] could spot all types of damage and determine immediately whether it was termites."
On April 18, 1986, Rossini executed the contract to purchase the home. Black included an extra provision in the contract which assured that the "sellers will provide a termite certificate showing house to be free of termites." The parties finalized the deal on the house the following August. At the closing of the deal at the bank, a Land Bank officer showed her the termite infestation report. However, Rossini thought she would get something else to satisfy the added portion of the contract.
The following spring when she was preparing for painting and some spring cleaning, Rossini noticed the termite infestation. She then called Leslie Ray, an employee of Redd Pest to come check the area. When he arrived he saw active termites in the paneling. According to Rossini, "when Mr. Ray first came out to the house ... he looked at what [Rossini] showed him ... and we told her that it definitely was termite damage and it was old damage. He said it had been there quite some time ... probably years." Ray also told Rossini that Redd Pest was responsible, and they would have to repair the house. When Strickland arrived Rossini heard Ray ask Strickland how he could have failed to see this damage when he conducted his inspection. Strickland responded that "`[he] just didn't see it.'" To that response, according to Rossini, Ray stated that he could break Strickland's neck. Strickland testified that he did not recall Ray making that comment, but he did not deny that the statement was made.
Strickland and Ray conducted another investigation. According to Strickland, the inspection revealed a shutter that had been off the side of the house with termite tunnels along the back of the shutter. Termite tunnels were also in the carport area. Strickland denied observing soft spots around the window sills. Strickland denied having seen any of this evidence of termites on the prior occasion that he had been at the house. Rossini asked Redd to *1272 treat the problem, but the company never did. Strickland returned to the house a couple of weeks later. This time he was joined by the regional manager of Redd Pest, Everett Pennington, Ray, Mike Peeples, a former State Plant Board Agent and Mickey Sims, who was serving as an inspection licensing agent. On this occasion, Strickland showed the others what he had seen on his second visit. They also went to the attic and took pictures. They discovered termite tunnels in the attic. Sims testified that the termites were active and the infestation was old.
There was much testimony regarding the extent of the termite infestation. The exhibits detail the damage. In her testimony Rossini indicated that she saw tunnels and tubes hanging from the support beams and rafters in her attic. The shingles on the roof of her house and around the garage were soft and mushy enough to poke your finger through them. When these shingles were lifted one would find "just thousands and thousands of active termites." One of the support beams in Rossini's house was "literally sawdust" because the termites had eaten it up. Rossini identified a picture which indicated that termite tunnels were "going down the beams that go all the way across literally from one end of the house to the other end of the house, from the garage to the other end of the house." Other pictures depicted entire walls having been eaten up by the termites. This destruction was apparent throughout the house.
Rossini also indicated that the termites were so numerous that they literally covered her carpet, everything in the house including her. When they swarmed, they would get all over her, the children, their food and their clothing. In fact, they were so bad that she could not continue to live in her house so she moved.
Redd Pest never treated her house after these discoveries. Rossini hired Orkin Exterminating Co. to do the job and it cost her $1700. Lee Vallery, the termite inspector for Orkin, testified to the extent of the damage throughout the house. He noted that termites had swarmed in the living room. There was evidence that they had eaten away at the window sill and the shutters. He claimed that he found eighty-six active tunnels in the attic. In describing how long it would take for this type of damage to occur, Vallery asserted that "[b]efore a termite can do any damage the colony must be at least three years old. It takes them three years to mature." Vallery further indicated that when an inspector observes suspect areas such as wet areas which result in roof damage or damage to wood shingles, this must be recorded on the standard VA form that Strickland used. If an inspector, after an inspection, concluded that there were inaccessible areas, he should note those areas on his report.
Rossini hired Jimmy Word, a local contractor, and he testified that the estimated cost of repair for the damage was $39,000. Although he had been on the property previously, probably a year before, to estimate the cost of water damage, that cost was not reflected in this estimate of the termite damage.
After evaluating the foregoing evidence, the jury returned a verdict for Rossini. The appellants timely filed this appeal, and we now discuss the errors which require us to reverse the lower court's judgment on the issue of damages.

II.
In their first contention, Strickland and Redd Pest assert that:

THE LOWER COURT ERRED IN GRANTING JURY INSTRUCTION P-4
Instruction P-4, granted over Redd Pest's objection, states:
The Court instructs the Jury for the Plaintiff that if you find from a preponderance of the evidence that Redd or Strickland acted in a negligent and in careless disregard for the right of the Plaintiff, and that said negligence was the proximate cause of the damages sustained by the Plaintiff, then you may in your discretion award the Plaintiff punitive damages. [sic] against Strickland and Redd.
*1273 This instruction does not begin to properly state the law. In a long line of cases the Court has made clear that a plaintiff is entitled to punitive damages only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others. See, e.g. Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1187-88 (Miss. 1990); Life & Casualty Insurance Co. of Tennessee v. Bristow, 529 So.2d 620, 622, 624 (Miss. 1988); Independent Life & Accident Co. v. Peavy, 528 So.2d 1112, 1115 (Miss. 1988); Weems v. American Security Insurance Co., 486 So.2d 1222, 1226-27 (Miss. 1986); see also, Whittington v. Whittington, 535 So.2d 573, 583 (Miss. 1988). In the case sub judice, Instruction P-4 allows for punitive damages for negligent conduct; for simple negligence.
Rossini does not deny any of this, but she points to Instruction D-7 as providing a correct statement of the law. Instruction D-7 reads:
Unless the jury finds that Murray Strickland willfully and intentionally failed to report that he found termite damage or failed to report suspected areas or failed to report inaccessible areas by visual observation at the house or that Murray Strickland grossly and recklessly conducted his visual inspection of the house, then on the issue of punitive damages or exemplary damages it is your duty to return a verdict for the Defendants.
(emphasis added)
This Court faced a analogous question in Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40-1 (Miss. 1989). While discussing the submission of a legally erroneous instruction, this Court stated:
[The instruction] should not have been given. When faced with such a circumstance, however, on appellate review, we do not isolate the individual instruction attacked, but rather we read all of the instructions as a whole. Defects in [a] specific instruction do not require reversal where all instructions taken as a whole fairly  although not perfectly  announce the applicable primary rules of law ... Where it may be fairly charged that one or more instructions may have been confusingly worded, we should not reverse if other instructions clear up the confusing points ... On the other hand, where we find two or more instructions in hopeless and substantive conflict with each other, we often reverse.

Id. at 40-41 (emphasis added) (citations and footnotes omitted).
Like the instruction in Rain Forest, supra, Instruction P-4 is arguably misleading when considered in vacuo, but "[i]t is downright wrong when applied to the facts of this case." Id. at 41. The instruction requires that this Court reverse because the two instructions are in hopeless and substantive conflict with each other. They state substantially different standards for the award of punitive damages. Even though the trial judge in the case sub judice, unlike the judge in Rain Forest, gave the jury the pattern instruction requiring them to consider all the instructions as a whole, it could do no more than have them hopelessly confused.
The giving of Instruction P-4 requires reversal.

III.

THE LOWER COURT ERRED IN GRANTING PLAINTIFF'S INSTRUCTIONS P-4 AND P-13
Instruction P-13, to which Redd Pest also entered an objection, provides:
The Court instructs the Jury that if you find from a preponderance of the evidence that Murray Strickland was negligent, and while committing such negligence, if any, was acting within the scope of his employment, then in that event your verdict shall also be against Redd Pest Control Co., Inc.
Redd and Strickland assert that the above instruction failed to instruct the jury as to what conduct constitutes negligence. This is true, but other instructions did tell the jury what constitutes negligence. The record reveals that the jury was given the following instructions pertaining to the issue of Redd and Strickland's liability:

*1274 C-1
The word "negligence" as used in these instructions mean doing something a reasonably prudent person would not have done under like or similar circumstances, or the failure to do something that a a reasonably prudent person would have done under like or similar circumstances.
D-10
The court instructs the jury that unless you find that the plaintiff, Joyce Rossini, actually relied on the termite inspection report issued April 7, 1986 by Murray Strickland, and that Murray Strickland was negligent in the conduct of his inspection and the preparation of the report, you are obligated to return a verdict for defendants, Murray Strickland and Redd Pest Control Company.
P-13
The court instructs the jury that if you find from a preponderance of the evidence that Murray Strickland was negligent, and while committing such negligence, if any, was acting within the scope of his employment, then in that event your verdict should also be against Redd Pest Control, Inc.
D-7
The court instructs the jury that unless you find by a preponderance of the evidence that Murray Strickland willfully and intentionally failed to report that he found termite damage or failed to report suspect areas or failed to report inaccessible areas by a visual observation of the house or that Murray Strickland grossly or wrecklessly conducted his visual inspection of the house, then on the issue of punitive and exemplary damages, it is your sworn duty to return a verdict for the defendants, Murray Strickland and Redd Pest Control Company.
The standard definition of "negligence" in Instruction C-1, coupled with the language in Instruction D-10 which requires that, in order to find against Strickland, the jury had to find him negligent in conducting his inspection and in preparation of the report, and which also required the jury to find that the plaintiff relied on the report, adequately informed the jury on the elements necessary to establish the liability of Redd and Strickland. Taken collectively, the instructions given to the jury were more than adequate to support the jury verdict in favor of Rossini against Redd and Strickland on the issues of negligence and liability. Therefore, the assignment holds no merit.

IV.

THE LOWER COURT ERRED IN GRANTING INSTRUCTION P-10
The appellants objected to Instruction P-10, which states:
The Court instructs the Jury that if you find for the Plaintiff against Redd and Strickland, it is your duty to assess compensatory damages which [the] Plaintiff has sustained at such sum as you find from a preponderance of the evidence will be fair and reasonable. In so doing, you may consider the following:
1. Cost of repair to the Plaintiff's home for termite damage;
2. The reasonable sum of the loss of use of Plaintiff's home;
3. The mental pain and anguish the Plaintiff has suffered, if any; and
4. In the event you find punitive damage against Redd and Strickland, you may also award a reasonable sum to compensate the Plaintiff for attorney's fees as a part of the punitive damages.
The only evidence which reflects the amount of damage that Rossini suffered included the following: (1) she could not stand to live in the house because of the swarming termites; (2) she moved into Hallmark Garden Apartments where her rent was $310.00 per month; (3) she had to pay utilities at both places; and (4) her contractor gave an estimate of $39,000.00 for the amount of damage to the house.
"It is absolutely incumbent upon the party seeking to prove damages to offer into evidence the best evidence available *1275 [on] each and every item of damage." Eastland v. Gregory, 530 So.2d 172, 174 (Miss. 1988). In the case sub judice, Rossini did not put into the evidence, other than her word, anything which reflected her payments for rent at Hallmark Gardens. Moreover, there was no proof as to how many months she was forced to pay rent. There was no proof regarding the cost of utilities at both places. There was no proof regarding whether it was even necessary for her to move for a given period of time, albeit, the evidence did show that she moved out when the termites began to swarm. One unanswered question is whether she could have moved back in her home when the swarming ceased.[2]
If Rossini had records proving, or at least showing, payments made, she should have produced them. "While certainty is not required, a party must produce the best [evidence] that is available to him." Id. See also, Wall v. Swilley, 562 So.2d 1252, 1256 (Miss. 1990) (Whatever the measure of damages, they may be recovered only where and to the extent that the evidence removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty); Stephens v. Brock, 568 So.2d 702, 704 (Miss. 1990) ("[W]hile the measure of damages need not be perfect, the most accurate and reliable evidence available should be required") (quoting City of New Albany v. Barkley, 510 So.2d 805, 807 (Miss. 1987)).
Appellants also complain that the instruction allowed the jury to award an amount for mental pain and anguish without also requiring that Redd Pest's actions be willful, intentional, wanton or something else equivalent to gross negligence. There is language in some of our older cases to this effect. See Sears, Roebuck & Co. v. Young, 384 So.2d 69, 71 (Miss. 1980).
The rule once was that, to recover damages for emotional distress, the plaintiff had to prove either (a) an intentional or at least grossly negligent tort or (b) negligence accompanied by physical impact. The Court has relaxed this rule in a long series of cases, beginning with First National Bank v. Langley, 314 So.2d 324, 328 (Miss. 1975), and including Sears, Roebuck & Co. v. Devers, 405 So.2d 898, 902 (Miss. 1981); Entex, Inc. v. McGuire, 414 So.2d 437, 444 (Miss. 1982); Royal Oil Co. v. Wells, 500 So.2d 439, 448 (Miss. 1986); Blue Cross & Blue Shield of Mississippi, Inc. v. Maas, 516 So.2d 495, 498 (Miss. 1987); Singleton v. Stegall, 580 So.2d 1242, 1247 (Miss. 1991); and most recently Wirtz v. Switzer, 586 So.2d 775, 784 (Miss. 1991); see also, McLoughlin v. O'Brian, (1983) 1 A.C. 410. The upshot of these cases in the present rule is a plaintiff may recover for emotional injury proximately resulting from negligent conduct, provided only that the injury was reasonably foreseeable by the defendant.
The problem on this point is Rossini's lack of proof. The only evidence concerning her emotional state was offered by her boyfriend's testimony. He explained:
She's been very depressed. Her kids have been very upset over all this and emotional. They've gone through a lot of stress and worry over the way their mother has been upset and sick and not able to sleep at night. I've been called to come out there and sit with her [on] occasions at night because of being [sic] so upset, and it's just . . [.] it's been a very detrimental thing for her.
Vol. II, at 112.
As Redd Pest appropriately points out:
The jury returned a verdict in the amount of $62,000.00 as actual damages against Redd and Strickland ... The only evidence of actual damages presented by Rossini was a $39,000 estimate of repairs by Mr. Word, ... and a $1,700 fee for termite treatment ... Assuming the jury also allowed, under this instruction, five months' rent at $310 per month or $1,550 and $100 per mont for utilities or $500, the total amount of actual damages that *1276 could be assessed against Defendants Redd and Strickland based on the proof presented would be $42,750. The jury awarded $62,000 in compensatory damage. The jury must have granted an award for mental pain and anguish in returning compensatory damages.
In the end, there is little proof in this record to support the award for compensatory damages and damages for mental anguish. On the points set forth above, the evidence was legally insufficient to support the giving of Instruction P-10.
After reviewing the record and the briefs of this case and the applicable law, the judgment is affirmed on liability. See Hosford v. McKissack, 589 So.2d 108 (Miss. 1991). We conclude that this case must be reversed and remanded for a hearing on the issue of the appropriate damages that ought to be awarded to Rossini.

V.

THE PROPRIETY OF INDEMNIFICATION
Redd Pest and Strickland question the propriety of the trial court's granting The Federal Land Bank indemnity against them. Redd and Strickland maintain, as the principal basis for their contention that Land Bank is not entitled to indemnity from them, that Land Bank's liability resulted from its failure to provide the plaintiff a certificate pursuant to the Contract of Purchase and Sale between the parties showing the house to be "free of termites," while Redd and Strickland's liability stems from the negligent performance of the termite inspection at the subject house. Far from supporting the proposition that Land Bank is not entitled to indemnity from Redd and Strickland, this distinction between the parties' respective roles supports the conclusion that Land Bank, as a matter of law and equity, is entitled to indemnity. Moreover, the active conduct of Redd and Strickland are the reason Land Bank has been held liable to Rossini.
In Mississippi, the historic rule governing implied indemnity among co-defendants is that, where one defendant's liability is secondary as opposed to primary or is based on passive conduct as opposed to positive negligence, that party may be entitled, upon an "equitable consideration" to indemnity. Home Insurance Co. v. Atlas Tank Mfg. Co., 230 So.2d 549, 551 (Miss. 1970).
The conduct of Federal Land Bank in the instant case clearly did not constitute the primary cause of the plaintiff's damage. The conduct of Land Bank can only be classified as passive. Land Bank is not engaged in the business of inspecting buildings for termites. It did not do so in this case. As with everyone who engages in buying and selling residential real estate, Land Bank relied on a pest control company licensed by the State of Mississippi to conduct a termite inspection on its behalf. Rossini did not incur damages as a result of any action by Land Bank. Rossini was damaged because the Termite Certificate prepared by Strickland and delivered to Land Bank falsely certified that Strickland had carefully inspected the premises and, thus, negligently reported no evidence of the existence of termites or termite damage to the home. The reason that Rossini sustained damages was that her new house was partially destroyed by termites not identified and, thus, not treated, as a result of Strickland's negligence in conducting his inspection.
In this case, Federal Land Bank owed Rossini an obligation to provide her with a termite certificate showing the house to be free of termites and, although the certificate which Land Bank provided was deficient to meet Rossini's expectations, Land Bank did not actively participate in the wrong which proximately caused the damage sustained by the plaintiff. Consequently, it was entirely appropriate for the trial judge to rule that, in the event the jury awarded the plaintiff damages as against Land Bank, Land Bank was entitled to indemnity from Redd and Strickland.
Beyond this, recent case law enforces and reinforces the legal responsibility upon experts or professional persons who negligently supply information upon which others rely and support the trial judge's decision *1277 on indemnity, even if the classic active/passive dichotomy were absent. In Touche Ross v. Commercial Union Ins., 514 So.2d 315 (Miss. 1987), the Court expressly adopted Restatement (2d) of Torts § 552 which states:
One who, in the course of his business, profession or employment, or in any other transaction which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction is subject to liability for pecuniary loss suffered by them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating information.
514 So.2d at 319.
This rule permits parties who are foreseeable recipients of a negligently prepared professional opinion and who detrimentally rely on that opinion in their business affairs to recover from the person offering the opinion. This rule is applicable both to Rossini's direct claim against Redd and Strickland and to the indemnity claim by Land Bank. Hosford v. McKissack, supra, to like effect.
The principles of § 552 of the Restatement and of Touche Ross v. Commercial Union have been applied by this Court to cross-claims for indemnity, substantially similar to the cross-claim for indemnity by Federal Land Bank against Redd and Strickland. U.R.S. Co. v. Gulfport-Biloxi Regional Airport Authority, 544 So.2d 824 (Miss. 1989); State v. Malvaney, 221 Miss. 190, 72 So.2d 424 (1954).
Redd and Strickland are professionals licensed by the State of Mississippi to perform termite inspections and treatment services. They hold themselves out to the public as being experts in their field. Land Bank's representations to Rossini were made in justifiable reliance on the inspection of Strickland and the certificate prepared by Redd. Federal Land Bank had the right to rely on these services being performed in a competent manner and, if the information provided was deficient, to recover from Redd and Strickland for any damage incurred by it as a result of its liability to third parties, such as Mrs. Rossini, who may have been injured thereby. The evidence before the Court makes it abundantly clear that the reason Land Bank has been held liable is the active conduct of Redd Pest and Strickland. The trial judge properly ordered Redd and Strickland to indemnify Federal Land Bank for the damages incurred by Mrs. Rossini as a result of the termite infestation of her home, which Strickland's inspection and report failed to identify. There was adequate evidence that, had the inspection and report been properly done, the infestation and resulting damage could have been prevented by timely treatment.
It is clear that Redd and its agent, Strickland, are the parties whose conduct resulted in plaintiff's damage. Federal Land Bank's conduct did not passively or actively cause or contribute to Mrs. Rossini's damage. Furthermore, as parties engaged in the business of providing information to others, for guidance in their business affairs, Redd and Strickland are subject to liability for the losses sustained by others who justifiably rely on their negligently prepared information. See, Touche Ross v. Commercial Union, supra; Hosford v. McKissack, supra; Restatement (2d) of Torts § 552. This rule, of course, applies to indemnity claims by recipients who pass along such misinformation to third parties. U.R.S. Co. v. Gulfport-Biloxi Regional Airport Authority, supra. The trial judge's award of indemnification is affirmed.
AFFIRMED ON ISSUE OF LIABILITY; AFFIRMED ON INDEMNIFICATION ISSUE; REVERSED AND REMANDED FOR A NEW TRIAL ON ISSUE OF DAMAGES.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN and ROBERTSON, JJ., concur.
DAN M. LEE, P.J., concurs in part.
PITTMAN, BANKS and McRAE, JJ., not participating according to supreme court internal rules.
NOTES
[1] The same attorney represented Redd and Strickland; therefore, sometimes references are only made to Strickland or Redd Pest, but any reference to one party is also a reference to the other party.
[2] The extensive damage throughout her home indicates that it was quite necessary for her to move.