## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2000-CA-00603-SCT

*JASON RAY SMITH, AS GUARDIAN AND NEXT OF FRIEND OF APRIL ALVAREZ, A MINOR, AND APRIL ALVAREZ, INDIVIDUALLY, AND THE ESTATE OF ANTONIO ALVAREZ*

*v.*

*JOHN PAYNE AND MASSENGILL TRUCKING SERVICE, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/1999 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JIMMY D. SHELTON |
| | JASON LEE SHELTON |
| ATTORNEYS FOR APPELLEES: | STUART ROBINSON, JR. |
| | CHARLES STEPHEN STACK, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED -01/10/2002 |
| MOTION FOR REHEARING FILED: | 2/19/2002 |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case arises as a result of an automobile collision which occurred on or about May 29, 1997, in Lee County, Mississippi. The plaintiffs appeal the Circuit Court of Lee County's denial of their motion for judgment notwithstanding the verdict, or, in the alternative, motion for a new trial. The plaintiffs seek to reverse the decision of the jury and trial court, particularly as to the finding of no liability of the defendants, John Payne and Massengill Trucking.

## FACTS

¶2. On the afternoon of May 29, 1997, an automobile accident occurred on U.S. Highway 45, just outside of Tupelo, Mississippi. At the time of the accident, Doris Hood ("Hood") was driving in a northerly direction in the inside lane of Highway 45. At the same time, John Long ("Long"), a minor, was operating a vehicle in the outermost lane. As the Long and Hood vehicles approached the Highway 78-Highway 45 alternate junction, a semi-tractor trailer owned by Massengill Trucking, Inc., ("Massengill") and driven by John Payne ("Payne"), began to exit off Highway 78 and merge with Highway 45 traffic. As Payne entered the acceleration lane, the Long and Hood vehicles were both directly approaching from the south. Payne never left the acceleration lane prior to the accident. The posted exit speed for the entrance ramp for Highway 45 was 20 mph, and, by Payne's own testimony, the truck was exceeding the posted speed as it charged down the entrance ramp.

¶3. Upon seeing the Payne vehicle coming off the ramp at a high speed, Long abruptly changed lanes to the inside lane without signaling and without looking over his shoulder to see if the lane was clear. At this point, Hood's vehicle was approaching rapidly from the rear of the inside lane, and accordingly she was forced to apply her brakes to avoid a collision with Long's vehicle. Hood subsequently lost control of her vehicle and crossed over the median into the southbound lanes of Highway 45. Thereafter, she struck the vehicle driven by April Alvarez on Highway 45 South.

¶4. As a result of the severe impact of Hood's vehicle into Alvarez's vehicle, Alvarez was injured and her husband, Antonio Alvarez, who was a passenger, was killed. Alvarez and Jason Ray Smith, as guardian and next friend, (hereafter collectively referred to as "Smith" or plaintiffs), initially filed suit against Doris Hood, alleging her negligence as a proximate cause of the accident. Later, Smith amended his complaint to include Long, Payne, and Massengill as defendants. Hood and her husband subsequently filed a cross-complaint against Long, Payne, and Massengill.

¶5. Prior to trial, settlements were reached between Smith and the Hoods, Smith and Long, and the Hoods and Long.[1] This left only Payne and Massengill as the remaining defendants. The defendants requested that the Hoods produce their settlement agreement with Long. The Hoods, however, refused, and the defendants then filed a Motion to Compel seeking to have the Hoods disclose the amount of settlement with Long and seeking copies of all settlement documentation. Specifically, the defendants wanted to study the settlement documentation to determine whether Long and the Hoods entered into what is commonly referred to as a "Mary Carter" agreement.

¶6. A telephonic hearing was held on this motion on Wednesday, September 15, 1999. During the hearing, the trial judge specifically asked counsel for the Hoods whether there was a "Mary Carter" agreement. With the understanding that there was no such agreement, the judge denied the defendants' motion to compel. The judge also ruled that neither the fact of settlement nor its amount would be admissible at trial.

¶7. On the Saturday before trial, counsel for the Hoods unexpectedly forwarded a letter to the defendants and the trial judge at his home, indicating that there was a written agreement. After reviewing the agreement produced by the Hoods' counsel, the trial judge reversed his telephonic ruling on the Motion to Compel. The judge stated the following about the recently-produced agreement:

> After going through it [the agreement] and reading the document, it appears to the Court that part of it was that the party had settled had agreed in fact to testify as to whatever was necessary according to the agreement. And based upon what that agreement was, the Court is of the opinion that it is a Mary Carter agreement. And because of that agreement, the Court is of the opinion that the amount of the settlement and anything that's related to that, the fact that they were going to testify, is and should be used by the defense in this case, and the Court is accordingly going to rule so.

¶8. Counsel for the Hoods revealed to the jury during voir dire the fact that a settlement had occurred as well as the contents of the settlement agreement, namely the amount of the settlement as well as Long's agreement to cooperate with the Hoods and testify at trial.[2] Also, on direct examination of Long, counsel for the Hoods asked Long whether he had agreed to cooperate with the Hoods and testify at trial. On cross-examination of Long, defense counsel asked Long whether her had reached a settlement with the Hoods and the amount of the settlement. At that time, defense counsel sought to admit the settlement agreement into evidence. Defense counsel did not ask Long about his agreement to cooperate and testify. The jury returned a verdict in favor of the Smith and Hood. They assessed percentages of fault as follows:

Hood -- 70%; Long -- 30%; Payne -- 0%. They awarded damages to Smith in the amount of $1.5 million. They awarded no damages to the Hoods. Smith's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied. Smith timely filed a notice of appeal.[(3)]

¶9. Smith raises the following issues on appeal:

**I. WHETHER THE SETTLEMENT AGREEMENT BETWEEN THE HOODS AND JOHN LONG WAS A "MARY CARTER AGREEMENT" WHICH WAS PROPERLY INTRODUCED TO THE JURY?**

**II. WHETHER THE INSTRUCTIONS GRANTED TO THE DEFENDANTS WERE PROPER?**

**ANALYSIS**

**I.**

¶10. The parties on appeal spend tremendous effort arguing whether the settlement agreement entered into by the Hoods and Long was a Mary Carter agreement. Regardless of the characterization of the agreement, it is apparent that the admission into evidence of the settlement agreement raises three evidentiary questions before this Court: (a) Was it error to inform the jury of the fact that Long and the Hoods had settled; (b) Was it error to inform the jury of the amount of the settlement; and (c) Was it error to inform the jury that, in the settlement agreement, Long agreed to "cooperate with Plaintiffs to prosecute their claims against Massengill Trucking and will testify at trial as needed."

¶11. Counsel for the Hoods informed the jury during voir dire of the settlement, the amount of the settlement, and Long's agreement to cooperate and testify. Smith at no time lodged an objection with the trial court. Prior to trial, the Hoods filed a motion in limine to prevent the introduction of the settlement agreement. This Court has recognized that a party who has been denied a motion in limine is not required to object when the evidence sought to be excluded is put before the jury. ***Jones v. Panola County***, 725 So. 2d 774, 775 (Miss. 1998); ***Kettle v. State***, 641 So. 2d 746, 748-49 (Miss. 1994). Smith, however, did not join in the motion in limine. Therefore, the rule that a contemporaneous objection is not required does not apply to Smith. Neither did Smith raise any objection during the pretrial hearing on the motion in limine, when counsel for the Hoods informed the jury of the contents of the agreement during voir dire, or when the settlement agreement was offered into evidence. Smith is not permitted to sit idly by while his co-plaintiff submits evidence to the jury and then complain on appeal. Smith's assignment of error is, therefore, procedurally barred. ***Walker v. State***, 729 So. 2d 197, 202 (Miss. 1998) (failure to raise lodge contemporaneous objection bars issue on appeal); ***Berry v. State***, 703 So. 2d 269, 281 (Miss. 1997); ***Holland v. State***, 705 So. 2d 307, 352 (Miss. 1997).

¶12. We should also note that even Hood would be precluded from raising this assignment of error as it was Hood that created the alleged errors to begin with by informing the jury of all contents of the settlement agreement during voir dire. *See **Brown ex rel. Webb v. Blackwood***, 697 So. 2d 763 (Miss. 1997) ("One may not complain on review of errors for which he was responsible ... [a]n appellant will not be permitted to take advantage of errors for the commission for which he was responsible, or which he himself committed, caused, brought about, provoked, participated in, created, or helped to create, or contributed to."). *See also **Cummins v. Century 21 Action Realty, Inc.***, 563 So. 2d 1382 (Miss. 1990) (same

holding, where trial court denied Cummins's motion in limine pertaining to settlement and Cummins's attorney referred to settlement during voir dire).

¶13. Nevertheless, despite the procedural bar, because this case is reversed and remanded for new trial due to conflicting jury instructions, we will briefly address these three questions of admissibility.

### Existence of a Settlement

¶14. Before the enactment of Miss. Code Ann. § 85-5-7 (1999), juries were often left in the dark as to "change of heart" following a settlement agreement. That is, before this section was enacted, trial judges often would allow the jury to consider only the fault of parties to the lawsuit and not settling defendants. *See, e.g.*, **McBride v. Chevron**, 673 So. 2d 372 (Miss. 1996). However, Miss. Code Ann. § 85-5-7(7) changed the situation and determined, "[i]n actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault." *Id.* This Court has interpreted this section to mean that any tortfeasor, even absent ones, that contributed to the injury must be considered by the jury when apportioning fault. *Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264 (Miss. 1999).

¶15. In *Robles ex rel. Robles v. Gollott & Sons Transfer & Storage, Inc.*, 697 So. 2d 383 (Miss. 1997), the trial court allowed defense counsel to bring out on cross-examination the fact that the plaintiff had sued the settling defendant and alleged her to have been negligent. This Court held that, in allowing the settlement to be mentioned, the trial court had followed one of the acceptable procedures used to determine damages due to a plaintiff where co-defendants are involved and one co-defendant has settled. *Id.* at 385.

¶16. The jury in the case sub judice was obligated to determine Long's percentage of fault irrespective of his status as a party at the time of trial. Logically, the jury was entitled to know that, up until the settlement, both the plaintiffs and the Hoods were claiming that John Long was at fault for the accident and brought suit against him seeking a recovery for the same. The trial judge did not err by allowing the jury to be informed of the settlement agreement.

### Amount of the Settlement

¶17. The jury should not have been told the amount of the settlement. This Court has stated that "[t]o inform a jury of the amount of a settlement prior to its returning a verdict for a joint tortfeasor or co-defendant will certainly and unnecessarily influence a jury in its decision." *Whittley v. City of Meridian*, 530 So. 2d 1341, 1346 (Miss. 1998). *See also Robles*, 697 So. 2d at 385 (jury must not be informed of the amount of the settlement). The probative value, if any exists at all, of the settlement amount is substantially outweighed by the danger of unfair prejudice. As we recognized in *Robles*, the tendency to determine that the plaintiff has already been adequately compensated is too tempting. *Robles*, 697 So. 2d at 385. The settlement amount should have been excluded pursuant to M.R.E. 403.

### Long's Agreement to Cooperate and Testify

¶18. Long's agreement to cooperate and testify is relevant to his credibility as a witness and may properly be inquired into on cross-examination by defense counsel. During the trial, defense counsel, on cross-examination of Long, admitted into evidence the settlement agreement, which contained Long's agreement to cooperate with the Hoods and testify at trial. However, he questioned Long about only the existence of the settlement and the amount of the settlement. He did not ask Long about the agreement to cooperate and

testify, presumably because there was no need to - Hoods' attorney had already informed the jury of the agreement, once during voir dire and again on direct examination of Long. On remand, defense counsel is entitled to cross-examine Long regarding his agreement to cooperate and testify.

## II.

¶19. The plaintiffs requested and were granted instruction P-7H that instructed the jury that defendant John Payne's violations of the posted traffic laws on the exit ramp constituted negligence as a matter of law. The aforementioned instruction also stated that "[i]f you find that John Payne's negligence and failure to comply with this regulation was the sole proximate cause or proximate contributing cause of the Plaintiff's Doris Hood's injury, then your verdict shall be for the Plaintiff, Doris Hood."

¶20. The trial court also granted defendants' instruction DP-19 and defendants' unnumbered instruction. Instruction DP -19 stated:

> The Court instructs the jury that if you find from a preponderance of the evidence that John Payne, as he reached the end of the exit ramp, increased his speed in the acceleration lane until reaching cruising speed, yielded to the approaching vehicle of John Long, and gave a proper signal to indicate that he intended to merge into the main flow of traffic, *then John Payne adhered to the standard of care for a reasonable and prudent driver* under the circumstances and your verdict should be for the Defendants, John Payne and Massengil Trucking Service, Inc.

(emphasis added). The unnumbered instruction read as follows:

> The Court instructs the jury that Highway 45 in this instance was a favored roadway and John Payne had a duty to yield the right-of-way to John Long's vehicle as it traveled on Highway 45 since it was approaching so closely on said highway as to constitute an immediate hazard. If you find from a preponderance of evidence that (1) John Payne's vehicle, prior to and during the time of the subject accident, at no time entered the outside (easternmost) lane on Highway 45 and (2) that John Payne otherwise made no overt action which would have indicated to a reasonable driver on Highway 45 that said driver was about to be deprived of his privilege of the immediate use of the highway, then *John Payne yielded the right of way and your verdict should be for the defendants*, John Payne and Massengil Trucking Service, Inc.

(emphasis added).

¶21. The plaintiffs argue that the aforementioned three jury instructions are conflicting and confusing. Specifically, they contend:

> "[s]uch instructions are antagonistic to one another and are simply incapable of being read in harmony for they tell the jury that they must find one thing while, at the same time, telling them that they may find a totally inapposite conclusion. Put another way, a person can not [sic] be negligent and not negligent at the same time while engaging in the same activity.

This Court has clearly articulated the standard we are to follow when assessing whether there has been a submission of legally erroneous instruction:

> [O]n appellate review, we do not isolate the individual instruction attacked, but rather we read all of

the instructions as a whole. Defects in [a] specific instruction do not require reversal where all instructions taken as a whole fairly--although not perfectly--announce the applicable primary rules of law ... Where it may be fairly charged that one or more instructions may have been confusingly worded, we should not reverse if other instructions clear up the confusing points ... On the other hand, where we find two or more instructions in hopeless and substantive conflict with each other, we often reverse.

*Strickland v. Rossini*, 589 So.2d 1268, 1273 (Miss. 1991) (quoting *Payne v. Rain Forest Nurseries, Inc.*, 540 So.2d 35, 40-41 (Miss. 1989)).

¶22. Clearly, instruction P-7H should not have been given. No accident occurred on the exit ramp, and Payne's exceeding the ramp speed per se could not cause Hood's injury as a matter of law. Furthermore, even assuming instruction P-7H was warranted, the instructions as a whole are in hopeless and substantive conflict with each other. Instruction P-7H informed the jury that Payne's violations of the speed limit constituted negligence as a matter of law, while instruction DP-19 informed the jury that if Payne accelerated to cruising speed, yielded to Long, and turned on his signal, then he was not negligent. The unnumbered instruction informed the jury that it could find Payne had not breached his duty to yield. Stated simply, the jury was instructed that it must find Payne negligent and, at the same time, that it could find that Payne was not negligent. These instructions are incapable of being read in harmony.

¶23. In *Elam v. Pilcher*, 552 So. 2d 814 (Miss. 1989), the trial court submitted to the jury the question of the defendant's negligence, while at the same time instructing the jury that the defendant was negligent as a matter of law. This Court held that this was reversible error. *Id.* at 817. Likewise, we cannot say that the conflict that existed in the instructions did not prejudice Smith. It cannot be determined from the verdict of the jury, which found no liability on the part of Payne, whether the jury disregarded instruction P-7H. It is possible that the jury considered instruction P-7H and still determined causation to be lacking.

¶24. This Court finds that the verdict was the result of an improperly instructed jury. Not only was instruction P-7H improperly given, but the instructions as a whole were contradictory and confusing. Accordingly, the judgment of the trial court must be reversed and this case remanded for a new trial.

## CONCLUSION

¶25. We are of the opinion that the motion for a new trial should have been granted. The judgment of the trial court is reversed, and this case is remanded for a new trial on both issues of liability and damages. On retrial, the jury may be informed of existence of the settlement between Long and the Hoods, but it should not be told the amount of the settlement. Defense counsel is entitled to cross-examine Long regarding his agreement to cooperate with the Hoods and testify at trial as such is clearly relevant to his credibility as a witness.

¶26. **REVERSED AND REMANDED.**

**PITTMAN, C.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., AND DIAZ, J., CONCUR IN RESULT ONLY.**

1. The only settlement agreement at issue in this case is that between the Hoods and Long.

2. John Long settled for $165,000.

3. The Hoods do not appeal the judgment of the trial court.