# IN THE COURT OF APPEALS 02/11/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-CA-00860 COA

JOHNNY L. DICKSON

APPELLANT

 v.

 JITNEY JUNGLE STORES OF AMERICA, INC.

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. ROBERT L. GIBBS

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

JAMES W. NOBLES, JR.

ATTORNEY FOR APPELLEE:

F. HALL BAILEY

NATURE OF THE CASE: CIVIL - PERSONAL INJURY

TRIAL COURT DISPOSITION: JUDGMENT FOR THE DEFENDANT

MANDATE ISSUED: 7/17/97

BEFORE THOMAS, P.J., COLEMAN, AND SOUTHWICK, JJ.

COLEMAN, J., FOR THE COURT:

Johnny L. Dickson, a Jackson police officer, slipped and fell while shopping for his lunch in a Jitney Jungle grocery store on April 3, 1990. Dickson sued Jitney Jungle Stores of America, Inc., (Jitney Jungle) for its negligence in allowing water to remain on the floor of the store, which, Dickson claimed, proximately caused his injuries. After the jury rendered its verdict for Jitney Jungle, the trial court entered its judgment for Jitney Jungle. Dickson moved for a judgment notwithstanding the verdict and a new trial, which the trial court denied. Dickson appeals to this Court to argue that the trial court erred in giving three of the jury instructions for Jitney Jungle. We affirm the judgment of the lower court.

## I. FACTS

While on duty, Dickson, a veteran of thirty years service with the Jackson Police Department, who was then serving as commander of Precinct One in south Jackson, entered Jitney Jungle store number nine located at Daniel Lake Boulevard and Terry Road in south Jackson at approximately 12:50 p.m. on April 3, 1990, to purchase milk and cheese for a portion of his lunch. After he had taken a half-gallon of milk in a cardboard carton and some cheese from the dairy case, which was located in the rear of the building, Dickson proceeded up aisle number nine of the store toward the checkout lines to pay for the items. While he walked up the aisle toward the front of the store, Dickson slipped on the floor and landed on his left knee. As Dickson testified at trial, "I turned up aisle nine and then, as I did so, about middle ways, my right foot -- I was in a walking mode -- and my right foot slipped in front of me, went straight in front of me, and my knee went directly down to the concrete floor."

Dixon sustained a comminuted fracture of his left knee cap, the consequences of which were two operations. The first operation was to repair the fractured patella, and the second operation sometime later was to re-attach the tendon that ran from the quadriceps muscle, a large muscle located in the front of his thigh, to the patella via a wire attached to the tendon and the patella. When Dickson slipped and fell, the cheese and milk he carried in his hands dropped to the floor. The cardboard half-gallon carton of milk hit the ground and burst, spilling the milk in the area where Dickson lay injured. Dickson used his personal, hand-held police communications radio, which he carried in a holster on his belt, to call the precinct to report his injury and to request assistance at the scene of his mishap.

From her vantage point at the frozen food counter located at the rear of the store, Tammy McNair, the seafood manager, saw Dickson fall. Ms. McNair's view up aisle number 9 was unobstructed. When she saw Dickson fall, McNair ran to the telephone at the meat counter to call the store co-manager, Claude Smith, to tell him to go to aisle nine where Dickson had fallen to the floor. The store employees went to Dickson and helped him until the paramedics arrived. McNair went to aisle eleven to get a roll of paper towels off the shelf to use to soak up the milk which had spilled from the burst carton onto the floor. Within about five minutes of Dickson's distress call from his radio, police and fire rescue personnel were in the store to attend to his injuries. The ambulance arrived about ten minutes later, and Dickson was taken to the hospital.

## II. TRIAL

Dickson filed suit in Hinds County Circuit Court against Jitney Jungle Stores of America, Inc. alleging, *inter alia*, that Jitney Jungle was negligent by allowing water flowing from a defrosting

freezer to remain on the floor of the store. Dickson claimed that: (1) the water was attributable to Jitney Jungle's actions in the operation of the store, (2) Jitney Jungle did not warn of the danger presented by the water draining into the aisle, and (3) Jitney Jungle failed to inspect the premises in a timely manner to discover the water. He asserted Jitney's negligence proximately caused him to slip and fall, thus resulting in the injury to his knee.

At the trial, a question of fact arose concerning the substance on the floor that caused Dickson to slip and fall. Dickson presented testimony which established that Jitney Jungle had notice that if the drain was stopped up, water would accumulate behind the freezers in aisle nine when the freezers on aisle eight went into a defrost mode. He also presented the testimony of the three police officers who responded to Dickson's distress call to explain that the floor around where Dickson lay was wet. However, none of these officers would identify the wet spot as having been made by water. In its defense, Jitney offered the testimony of Tammy McNair, in which she stated that after she assisted in cleaning up the milk on the floor, she walked down aisle nine toward the back of the store to follow a trail of milk from the spot where Dickson had fallen to the dairy case from which Dickson had taken the carton of milk. It appears from this testimony that Jitney Jungle hoped that the jury might infer that Dickson had slipped on the trail of spilt milk.

Rachel Padget, a former cashier at the store, testified that defrosting freezers had spilled over into the aisles when the drains clogged, but she added that when new freezers with glass doors replaced the tub-type freezers *after* Dickson fell, there were no more leaks from the newly installed freezers with glass doors. Steve Booker, Jitney Jungle's refrigeration general maintenance employee who was in charge of the freezers located within its store number nine, testified that the new freezers with glass doors had been installed in January of 1990, which, of course, antedated Dickson's fall on April 3, 1990. Booker explained that when the new freezers with glass doors had been installed to replace the old "tub" or "coffin" freezers, the drains were replaced. According to Booker, no leaks had occurred in the area of aisle number nine where Dickson fell after the new glass-door freezers had been installed.

Jitney Jungle's defense was that the condition of the floor where Dickson fell was "open and obvious, " that Dickson failed to exercise reasonable care for his own safety, and that therefore Dickson was precluded from recovering damages from Jitney Jungle for his injuries. The jury returned a verdict for Jitney Jungle, and the trial court entered a judgment for Jitney Jungle. Dickson filed motions for judgment notwithstanding the verdict and for a new trial, which the trial court denied. Dickson has now appealed.

### III. ISSUES

Dickson raises two issues on appeal, both involving the jury instructions proposed by Jitney's counsel, to which Dickson's counsel objected, but which, nevertheless, the trial judge gave to the jury before they deliberated. We state these two issues as Dickson framed them in his brief:

**<u>FIRST ISSUE</u>**

> The trial court erred in giving Defendant's Instructions D-8 and D-9 because the same

contain conflicting statements of the law which allow the defense based on an "open and obvious danger" to premises as contributory negligence being a complete bar to the Appellant's claim and which negates the duty of the store owner to maintain its premises in a reasonably safe condition and places the entire fault on the business invitee who had no control of the premises or equipment causing the conditions resulting from the store owner's failure to properly maintain its equipment and premises.

### SECOND ISSUE

The trial court erred in granting Defendant's Instruction D-3 which contains an erroneous definition of "proximate cause" because it contains a "but for" and singular definition of proximate cause which negates the comparative negligence doctrine and erroneously instructed the jury that there could be but one event immediately preceding the fall which was the proximate cause of the injury. Said instruction ignores that there can be more than one proximate cause of injury and is in hopeless conflict with Plaintiff's Instruction P-9 so that the jury was left with a definition of proximate cause which, when applied as defined by the court, led to a verdict for the Defendant, which is based on an erroneous statement of the law.

## IV. ANALYSIS AND RESOLUTION OF THE ISSUES

### A. Standard of Review

In *Boone v. Wal-Mart Stores, Inc.*, 680 So. 2d 844, 845 (Miss. 1996), the Mississippi Supreme Court reiterated the following standard of review for error in granting and denying jury instructions:

> On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. Accordingly, defects in specific instructions do not require reversal where all instructions taken as a whole fairly -- although not perfectly -- announce the applicable primary rules of law. However, if those instructions do not fairly or adequately instruct the jury, this Court can and will reverse.

This Court must resolve these two issues in accordance with this standard of review.

**B. FIRST ISSUE:** Did the trial court err when it gave Defendant's Instructions D-8 and D-9?

The two jury instructions which the trial judge granted Jitney Jungle and of which Dickson complains in this first issue read as follows:

JURY INSTRUCTION NO. D-8

> The Court instructs the jury that a store operator owes a duty to its customers to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the customer of hidden or concealed perils which the store operator knows of or should know of in the exercise of reasonable care.
>
> But the responsibility of the store operator is not absolute; it is not that of an insurer. The store operator is entitled to assume that the customer will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses. There is no duty to give the customer notice of an obvious defect or condition.

JURY INSTRUCTION NO. D-9

The Court instructs the jury that a customer in a store such as Johnny Dickson has a duty to use ordinary reasonable care for his own safety and to use that degree of care and prudence which a person of ordinary intelligence and prudence would exercise under the same or similar circumstances and must make reasonable use of his own faculties to observe and avoid dangers upon the premises. The Court further instructs the jury that a store owner has no duty to warn a customer of a dangerous condition that is open and obvious to anyone exercising ordinary or reasonable care for his own safety.

Therefore, the Court instructs you that if you find from a preponderance of the evidence in this case that the condition of the floor was open and obvious to anyone exercising ordinary and reasonable care for his own safety and that Johnny Dickson failed to exercise ordinary or reasonable care for his own safety, then he was negligent and should you find from a preponderance of the evidence that such negligence was the sole proximate cause of the accident in question and the injuries to Johnny Dickson, if any, it is your sworn duty to return a verdict for the Defendant, Jitney Jungle Stores of America, Inc.

Dickson initiates his argument on this issue with the rhetorical question, "Is Mississippi truly a comparative negligence state?," which he then answers, "'Not totally,' because of the resort to contributory negligence's being a total bar via the use of the open and obvious danger doctrine, which ignores the negligence of the original actor in creating the hazard and places the entire blame on the injured party for either not seeing what he or she should have seen, and being hurt by what is described by others as an 'open and obvious' danger, or by the failure to recognize the hazard presented by the conditions present." He further argues that the "open and obvious" danger "is the purest form of contributory negligence being a bar to the claim of an injured party," and that it "shortcuts the 'assumption of the risk' doctrine which requires that, at least, the injured party recognize the hazard and voluntarily expose himself or herself to that danger." Dickson concludes his argument by submitting "that the time has come for this Honorable Court to give the 'open and obvious danger rule' its proper demise and burial, since it is not only violative of the comparative negligence statute, but is an assumption of risk defense with two key elements missing, that being the recognition of the hazard and a voluntary exposure to the known hazard."

On July 6, 1994, Dickson filed his brief with the Mississippi Supreme Court. Fifteen days later, on July 21, 1994, that court unknowingly accepted Dickson's invitation "to give the 'open and obvious danger rule' its proper demise and burial" in *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994) when it advised the bench and bar:

> We now abolish the so-called "open and obvious" defense and apply our true comparative negligence doctrine. The jury found that there was negligence in the case at hand; the trial judge erred in construing the open and obvious defense as a complete bar when it really is only a mitigation of damages on a comparative negligence basis under Miss. Code Ann. § 11-7-15.

Section 11-7-15 of the Mississippi Code establishes the principle that in personal injury cases like the one *sub judice*, "[c]ontributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured." Miss. Code Ann. § 11-7-15 (1972). The Mississippi Supreme Court has reaffirmed "that the open and obvious doctrine is not a complete defense to negligent actions in premise liability cases where the condition complained of is unreasonably dangerous." *Tate v. Southern Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995); *see also Downs v. Choo*, 656 So. 2d 84, 87 (Miss. 1995) (reversing the trial court's grant of summary judgment to defendant store owner in claim filed by customer who slipped and fell on banana and saying that the parties should have the benefit of the supreme court's "change in . . . jurisprudence").

Nevertheless, the supplanting of the "open and obvious defense" in premises liability claims by applying the concept of comparative negligence as provided in Section 11-7-15 does not automatically condemn Jitney Jungle's Instructions D-8 and D-9. In *Bunge*, 641 So. 2d at 24, the supreme court explained the manner in which comparative negligence supplanted the open and obvious defense as follows:

> The defendant may be negligent, but so too may be the plaintiff. Thus, our comparative law applies. The "open and obvious" standard is simply a comparative negligence defense used to compare the negligence of the plaintiff to the negligence of the defendant. If the defendant was not negligent, it makes no difference if the dangerous condition was open and obvious to the plaintiff since the plaintiff must prove some negligence on [the] part of the defendant before recovery may be had. On the other hand, if the defendant and the plaintiff were both at fault in causing or attributing to the harm, then damages can be determined through the comparative negligence of both. Theoretically, if a plaintiff is ninety-nine (99%) percent negligent and the defendant is only one (1%) percent negligent, the plaintiff is still entitled to recover the one percent (1%) attributable to the negligence of the defendant.

To preserve for this Court's review an error based on the granting of a jury instruction, the litigant must state to the trial judge the ground on which he objects to the granting of the instruction. *Haddox v. State*, 636 So. 2d 1229, 1240 (Miss. 1994) (the assertion on appeal of grounds for an

objection [to a jury instruction] which was not the assertion at trial is not an issue properly preserved on appeal.).

## 1. Instruction D-8

With the foregoing discussion in mind, we first consider Instruction D-8, which we quoted earlier. Dickson's counsel objected to the trial judge's giving Instruction D-8 because "there is no proof on an open and obvious defect to support this instruction" and because "it violates the comparative negligence doctrine . . . ." The first objection is disingenuous because it potentially can be interpreted to mean that if there was no evidence of "an open and obvious defect to support this instruction," then there might be no evidence of any defect, latent, or otherwise to support Dickson's claim for damages against Jitney Jungle. Dickson does not pursue this first objection in his brief.

The second basis for Dickson's objection, "it violates the comparative negligence doctrine . . . ." requires this Court to consider Instruction No. P-9, which the trial court gave at Dickson's request. Instruction No. P-9 reads as follows:

> The Court instructs the jury that there may be more than one proximate cause of an accident and damages. If you find from a preponderance of the evidence in this case that the Defendant, Jitney Jungle Stores of America, Inc., was negligent as defined by the Court's instructions; and that its negligence, if any, proximately contributed to cause the Plaintiff's fall and his injuries and damages, if any, and you further find from a preponderance of the evidence that the Plaintiff, Johnny Dickson, was also negligent as defined by the Court's instructions; so that the combined negligence of the Defendant and of the Plaintiff proximately caused the accident, the Plaintiff's injuries and damages, if any, proximately caused thereby, you must determine the total amount of the Plaintiff's damages, and reduce them by the percentage, if any, which Johnny Dickson's negligence, if any, contributed to the accident.

We must further recite that the trial judge's Instruction No. C-1 which he gave to the jury contained the following paragraph: "You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole." Now this Court hearkens back to its standard of review which it previously quoted, and determines that Jitney's Instruction D-8 properly presented to the jury the issue of whether Dickson was comparatively negligent and that when Instruction P-9 is read and considered "as a whole," the issue of Dickson and Jitney Jungle's comparative negligence was properly presented to the jury for their consideration and resolution. Thus, the trial court's granting Instruction D-8 which Jitney Jungle requested was not error because that instruction must be read in conjunction with all the other jury instructions, including the trial judge's own instructions in which he instructed the jury "not to single out one instruction alone as stating the law, but [instead] consider these instructions as a whole."

## 2. Instruction D-9

Dickson argues that the trial judge erred when he granted Instruction D-9 which Jitney Jungle requested for the following reasons:

The facts of this case . . . clearly show that Jitney Jungle denied the existence of water [on] the floor [in] aisle 9, where water was previously known to accumulate due to clogged and overflowing drains from the freezer units on aisle 8, and be granted a jury instruction which invokes the "open and obvious danger" rule based on the vague terms "condition of the floor was open and obvious to anyone exercising ordinary and reasonable care for his own safety" without describing what condition the jury was supposed to find was open and obvious which caused Dickson to slip and fall. This instruction allows Jitney Jungle to escape it's admitting that there was a hazard on the floor, and puts the entire blame on the Plaintiff. It further allowed the jury to ignore the hidden or latent problems of the stopped-up and backed-up and overflowing drains of which the proprietor had superior knowledge and about which it failed to warn Dickson and other business invitees.

Dickson proceeds to ask, "Where is the proof that the water on the floor was open and obvious to Johnny Dickson? There is a complete absence of proof to support this instruction." He further argues that "there is no dispute that Dickson was not warned of the known propensities of water overflowing onto the store's floors at any time by the Jitney Jungle personnel." Therefore, Dickson concludes that Instruction D-9 was not "factually based."

For a jury instruction properly to be given, there must be an evidentiary basis for it. *Rester v. Lott*, 566 So. 2d 1266, 1269 (Miss. 1990). In this case the vagueness of the condition of the floor on which Dickson slipped and fell actually reflected the Plaintiff's bare discharge of his burden of proof that indeed the floor was wet where he slipped and fell. The store's co-manager, Claude Smith, testified that when he got to Dickson in aisle nine there was so much milk on the floor that he could not tell whether there was water in addition to the milk on the floor. Not one of the three police officers who responded to Dickson's call for assistance testified that water was the cause of the damp area on the floor in which Dickson had fallen. In short, Dickson's complaint that Instruction D-9 was unsupported by any evidence about the specific condition of the floor is almost tantamount to an admission that he had failed to establish by a preponderance of the evidence the source of the damp area and thus Jitney Jungle's negligence. Be that as it may, Instruction D-9 was factually consistent with Dickson's claim that he had slipped on a wet area on the floor in aisle number 9 which had been caused by the freezers' leaking into a clogged drain when they defrosted, about which the store's management knew. Thus, we hold that the trial judge did not err when he granted Instruction D-9.

Dickson offers no argument of law to support his contention that the trial judge erred when he gave Instruction D-9 to the jury. With regard to the argument that Instruction D-9 violates the comparative negligence doctrine, we repeat that the trial court's giving Instruction P-9, which Dickson requested, adequately instructed the jury on this issue and was therefore consistent with the Mississippi Supreme Court's supplanting the open and obvious danger defense with the statutory concept of comparative negligence.

**C. SECOND ISSUE:** The trial court erred in granting Defendant's Instruction D-3 which contains an erroneous

definition of "proximate cause" because it contains a "but for" and singular definition of proximate cause which negates the comparative negligence doctrine and erroneously instructed the jury that there could be but one event immediately preceding the fall which was the proximate cause of the injury.

Jury Instruction No. D-3, of which Dickson complains in his second issue, reads as follows:

JURY INSTRUCTION NO. D-3

The Court instructs the jury that the phrase "proximate cause" used in the instructions of the Court, means that event which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury without which the result would not have occurred; it is the last negligent act contributory to an injury, without which such injury would not have resulted.

Dickson contends that the definition of proximate cause contained in this instruction contains a "but for" clause which negates the comparative negligence doctrine and erroneously instructed the jury that there could be but one event immediately preceding the fall which was the proximate cause of the injury. Thus, Dickson argues that Instruction D-3 disregarded the proposition that there can be more than one proximate cause for an injury and that this instruction contradicted Instruction P-9, a correct comparative negligence instruction, which we previously quoted. The definition of proximate cause in Instruction D-3, without the last portion of the compound sentence, is correct. The phrase, "[i]t is the last negligent act contributory to an injury, without which such injury would not have resulted," renders the definition "proximate cause" as it would apply to the facts in the case *sub judice* incorrect.

"It is, of course, error to grant a jury instruction that misstates the law applicable to a case." *Munford, Inc. v. Fleming,* 597 So. 2d 1282, 1286 (Miss. 1992). When the trial court considered what instructions to grant, Dickson's counsel objected to Instruction D-3 for the same reasons that he has argued in his brief in this appeal. However, when the trial judge decided to grant Instruction D-3, he opined: "I think they [the instructions] can be read together, will be read together. So it will be given."

Jitney Jungle relies on *Grisham v. John Q. Long V.F.W. Post*, 519 So. 2d 413, 417 (Miss. 1988) to support its assertion that Instruction D-3 correctly defined "proximate cause." In *Grisham*, the Mississippi Supreme Court did write the following sentence about proximate cause:

The proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury, and without which the result would not have occurred.

*Id.* (citation omitted). The absence from the foregoing quotation of the latter part of the compound sentence in Instruction D-3 to which Dickson objects, *i. e.* "[i]t is the last negligent act contributory to an injury, without which such injury would not have resulted," is conspicuous. We conclude that *Grisham* does not support Jitney Jungle's proposition that Instruction D-3 in its entirety correctly explained the concept of "proximate cause."

However, were the inclusion of the final portion of Instruction D-3 erroneous, this error was corrected by the trial court's granting Instruction P-9, the first sentence of which instructs the jury "that there may be more than one proximate cause of an accident and damages." This phrase is a correct statement of the law. *See Tharp v. Bunge Corp.*, 641 So. 2d 20, 24 (Miss. 1994) ("Our law sets forth the premise that there may be more than one proximate cause to a negligent act."). Dickson argues that Instruction D-3 can be interpreted to mean only that "proximate cause" is "the last negligent act contributory to an injury," and that therefore it wrongly states the law. Hence the trial judge erred when he granted Instruction D-3.

However, our standard of review requires us to evaluate proposed errors of instructing the jury in terms of the instructions as a whole. Unless Instruction D-3 hopelessly contradicts Instruction P-9 so that we can only conclude that giving both of them to the jury hopelessly confused its members, then the trial judge's giving Instruction P-9 corrected whatever error of explanation of "proximate cause" Instruction D-3 contained. In *Payne v. Rain Forest Nurseries, Inc.*, 540 So. 2d 35, 41 (Miss. 1989), the supreme court warned that "where we find two or more instructions in hopeless and substantive conflict with each other, we often reverse." Indeed, that court did reverse and remand for a new trial in *Payne* because it found that one of the jury instructions was "in hopeless and substantial conflict [with the facts of that case]." *Id.*

This Court exercises the temerity to apply a crude form of logic to instructions D-3 and P-9 to determine whether they so hopelessly contradict each other that it must reverse and remand this case for a new trial. Instruction D-3 includes within its explanation of probable cause "the last negligent act contributory to an injury, without which such injury would not have resulted." Instruction P-9 instructs the jury that "there may be more than one proximate cause of an accident and damages." For our purpose we allow the phrase "proximate cause" to equal "the last negligent act contributory to an injury, without which such injury would not have resulted." We then substitute this equivalent phrase for the term "proximate cause" in Instruction P-9 to find that it reads as follows: "[T]here may be more than one *last negligent act contributory to an injury, without which such injury would not have resulted* of an accident and damages."

While this resulting sentence admittedly reads awkwardly, it is not contradictory in terms of its intended application to the maxim of comparative negligence, which was in turn applied to the evidence in this case. The evidence to which this sentence applied was Jitney Jungle's negligence in allowing the drains for the freezers to overflow when the freezers defrosted as Dickson charged versus Dickson's comparative negligence in ignoring an "open and obvious danger" which the water overflowing from the freezers' drain created as Jitney Jungle charged. Jitney Jungle's knowingly allowing the freezers' drains to overflow may have been the *last negligent act contributory to [Dickson's] injury, without which such injury would not have resulted*; or Dickson's negligence in ignoring the "open and obvious danger" of the water on the floor of aisle number nine may have been the *last negligent act contributory to [his] injury, without which such injury would not have*

*resulted*. If the jury found from the preponderance of the evidence that Jitney Jungle's knowingly allowing the freezers' drains to overflow was the *last negligent act contributory to [Dickson's] injury, without which such injury would not have resulted*, then it would be warranted in returning a verdict for Dickson. On the other hand, if the jury found that Dickson's negligence in ignoring the "open and obvious danger" of the water on the floor of aisle number nine was the *last negligent act contributory to [his] injury, without which such injury would not have resulted*, then it would have returned a verdict for Jitney Jungle.

We must hasten to add, however, that another possibility unrelated to our analysis of this issue remains to explain the jury's verdict for Jitney Jungle; and that possibility was that they found that Dickson had failed to establish even a *prima facie* case that Jitney Jungle had been negligent. There was also a fourth possible verdict consistent with our analysis of this issue, and that would have been that the jury determined that both Jitney Jungle's knowingly allowing the freezers' drains to overflow and Dickson's ignoring the "open and obvious danger" of the water on the floor of aisle number nine were the *last negligent act[s] contributory to Dickson's injury, without both of which such injury would not have resulted.* Had that happened, Instruction P-9 further instructed the members of the jury that they "must determine the total amount of the Plaintiff's damages, and reduce them by the percentage, if any, which Johnny Dickson's negligence, if any, contributed to the accident."

In addition to the foregoing standard of review which we quoted, the Mississippi Supreme Court established the following test for a reversal of a trial court on the grounds of misdirecting the jury with instructions in *Wallace v. J. C. Penney Co.,* 109 So. 2d 876, 878 (Miss. 1959):

> No judgment shall be reversed on the ground of misdirection to the jury. . . unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice.

> 3 Am.Jur., *Appeal and Error*, Sections 1111 and 1112, state this same principle in other ways: "One test that has been frequently held determinative of the prejudicial character of error in instructions is the correctness of the result; if that is correct, the error is not reversible. When the undisputed evidence establishes the correctness of the verdict, so that either with or without the erroneous instruction the verdict could not have been otherwise than it was and, had it been otherwise, it would have been set aside by the court, or if the result is one that might properly be directed by the court, technical errors will be disregarded. . . . Error in instructions is not prejudicial as against an unsuccessful plaintiff who has no cause of action, or who is not entitled to recover in any event, or who fails in his evidence to support the cause of action."

Dickson's argument and precedents on which he relies to support his argument that Instruction D-3 erroneously explained the concept of "proximate cause" does not persuade this Court that the trial judge erred when he granted that instruction. However, if Instruction D-3 explains "proximate cause" erroneously, that error was corrected by the trial court's granting Instruction P-9 which Dickson requested. Thus, we hold that the trial judge did not err when he granted Instruction D-3, and we resolve this issue against Dickson.

## V. SUMMARY

In *Tharp v. Bunge Corp.*, the Mississippi Supreme Court abolished the "open and obvious" defense and supplanted it with Mississippi's true comparative negligence doctrine. The trial court's grant at Dickson's request of Instruction P-9, a "comparative negligence" instruction, complied with the abolition of the "open and obvious" defense. Thus, we have held that the trial judge did not err when he granted Instructions D-8 and D-9 because these two instructions, when considered along with Instruction P-9, correctly expressed the principles of law by which Dickson's "slip and fall" claim against Jitney Jungle was to be decided by the jury. Regardless of whether Instruction D-3 explained the concept of "proximate cause" without error -- and Dickson failed to persuade us that its explanation of "proximate cause" was fatally defective -- Instruction P-9 obviated any error by instructing the jury that there may be more than one proximate cause of injury to a plaintiff.

Our application of the standard of review, *i. e.* jury instructions are read as a whole to determine if the jury was properly instructed, results in our conclusion that the trial judge correctly instructed the jury in this case and that the judgment of the trial court must be affirmed.

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT, JOHNNY L. DICKSON**.

**McMILLIN AND THOMAS, P.JJ., BARBER, KING, AND SOUTHWICK, JJ., CONCUR. BRIDGES, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND PAYNE, JJ. HERRING, J., NOT PARTICIPATING.**

# IN THE COURT OF APPEALS 2/11/97

# OF THE

# STATE OF MISSISSIPPI

### NO. 93-CA-00860 COA

**JOHNNY L. DICKSON**

**APPELLANT**

**v.**

**JITNEY JUNGLE STORES OF AMERICA, INC.**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

BRIDGES, C.J., DISSENTING:

I would respectfully dissent from the majority's affirmance of the judgment of the trial court in this case. I do not disagree with the majority's discussion of the law. I disagree with the majority's application of the law to the facts before this Court. Specifically, I would agree that on appeal, this Court should view the jury instructions together in deciding if they adequately instruct the jury on the law as it relates to the facts. I feel, however, that there comes a point, as in this case, where the sins of numerous inaccurate jury instructions cannot be overcome by the propriety of one instruction.

In its opinion, the majority discusses three instructions proposed by Jitney and given to the jury, D-3, D-8, and D-9. The majority then goes to great lengths to justify the giving of each of these instructions to the jury. D-8 and D-9, especially D-9, loosely use the terms "open" and/or "obvious". It is at least arguable that the last paragraph of D-9 comes perilously close to instructing that if the dangerous condition was open and obvious the jury should find for Jitney, a conclusion that is in clear conflict with the *Tharpe* case. The majority then states that D-3 is an incorrect statement of meaning of proximate cause. To this reader, the inference is that while each of these instructions, *taken separately*, may not be the best, or even the most correct statement of the law, any possible confusion created by each is ameliorated by the proper statement of the law in one of the instructions proposed by Dickson and given by the court, P-9.

It is well settled, and properly stated by the majority that this Court does not review jury instructions in isolation, rather they are viewed as a whole with the goal of determining if the jury was properly instructed. *Boone*, 680 So. 2d at 845. That same court also instructed, however, that if the instructions do not *fairly* or *adequately* instruct the jury, [the] court can and will reverse. *Id.* It is my opinion that instructions D-3, D-8, and D-9 are at the least confusing and at the most incorrect statements of the law. For example, the use of the phrase "open and obvious" in the second paragraph of D-9 in conjunction with the implication that it may bar Dickson's recovery makes this instruction confusing and misleading. This confusion is only enhanced by the wording of D-3, which the majority admits is incorrect, and D-8, which is also arguably in conflict with the accepted definition of comparative negligence. I further believe that the accuracy of P-9 cannot completely rehabilitate these bad instructions.

In light of the fact that there was conceivably enough evidence for the jury to find for Dickson and that there was a serious danger that these instructions were confusing and misleading to the jury, I feel that the verdict stands on very shaky ground. I am aware of the fact that we are bound by the jury verdict. I am also aware of the fact that it is our duty to overturn a jury verdict arrived at by jurors that have been unfairly or inadequately instructed. *Id.* To let the verdict stand would, in my view, serve as a great injustice to Dickson. Furthermore, to affirm this case would over extend the power of this Court, as stated in *Boone*, to overlook less than perfect instructions when accompanied by accurate instructions. Therefore, I respectfully dissent.

**DIAZ AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**