528 So.2d 293 (1988)
JERRY LEE'S GROCERY, INC. d/b/a Publik (Public) Warehouse
v.
Sammie T. THOMPSON.
No. 57726.
Supreme Court of Mississippi.
May 25, 1988.
Rehearing Denied July 27, 1988.
James H. Heidelberg, Bryant, Stennis & Colingo, Pascagoula, for appellant.
Dempsey M. Levi, Levi & Denham, Ocean Springs, Theresa D. McLaughlin, Gulfport, for appellee.
Before ROY NOBLE LEE, C.J., and ANDERSON and GRIFFIN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Jerry Lee's Grocery, Inc. has appealed from a judgment of the Circuit Court of Jackson County, Mississippi, in the sum of thirty-five thousand dollars ($35,000), entered against it and in favor of Sammie T. Thompson, for personal injuries sustained in a slip and fall accident. The appellant has assigned three (3) errors in the trial below.
On September 26, 1983, appellee Thompson went to appellant's store for the purpose of purchasing a six-pack of beer. He was accompanied by a co-worker, Eddie Hickson. As they proceeded to the beverage aisle, appellee turned the corner entering the aisle when he slipped and fell in a puddle of pine-scented cleaner.
Tommy Milstead, an employee of appellant, saw appellee immediately after the accident. He also observed a puddle of milky liquid on the floor approximately six or seven inches in diameter. According to him, there was a single skidmark which extended approximately two to three feet beyond the puddle. An open bottle of "Pine Power" was standing upright on the shelf just above the wet area. It was a *294 16-oz. plastic bottle, approximately 3/4 full, and was not damaged in any way. Milstead testified that he had walked down the beverage aisle across the site of the accident within one to two minutes before appellee, and, in doing so, had not observed any puddle or Pine-Sol on the floor.
Eddie Hickson, who was with appellee, testified that after helping appellee to his feet, he observed a puddle of pine-scented liquid covering approximately 4 1/2 to 5 feet of the floor; that the puddle was dirty and had footprints and shopping cart tracks running through it; and that it appeared the liquid had been on the floor for twenty (20) minutes, although he admitted that he was "just guessing" at such time.
Appellee testified that the puddle of liquid cleaner covered a 5- to 6-foot area on the floor; that after being helped to his feet, he observed a closed plastic bottle of cleaning liquid standing upright on the floor next to the puddle; that the puddle appeared dirty and had shopping cart tracks and footprints through it.
On the day after the accident, appellee visited Dr. Hal D. Bishop and in early October, 1983, he was seen by Dr. Christopher E. Wiggins. Appellee testified that he missed forty-two (42) days from work, and that he could no longer perform the same functions at work as prior to the accident. He claimed that subsequent to October, 1983, he developed stiffness in his neck and deafness in his right ear. At the time of the trial, he was still employed by Dantzler Bulk Plant in the same capacity and at the same salary as before the 1983 accident.
Billy Thigpen, Dantzler Bulk Plant manager, testified that appellee was paid his full salary for thirty (30) of the alleged 42 days in which he missed work; that appellee's gross salary for 1983 was $20,667.96 and for 1984, it was $22,052.11. He did not recall having altered appellee's work schedule or duties on account of the 1983 accident.
Dr. Hai D. Bishop, an orthopedic physician who initially examined appellee, on September 27, 1983, testified that appellee gave him a history of having fallen while at work; that all X-rays of appellee were normal; that appellee appeared to be suffering from a simple lumbrosacral strain; that appellee had visited his office on two later occasions for what he considered to be unrelated symptoms; that appellee's recurring back problems could not be definitely correlated to the September 1983 accident; and that on no occasion had appellee ever complained of deafness or neck pain. Dr. Bishop further testified that no evidence of permanent disability existed.
Dr. Christopher E. Wiggins, who examined appellee in October of 1983, first diagnosed appellee's problem as a lumbrosacral strain. Dr. Wiggins recommended rest but informed appellee that he could resume his normal work routine on October 18. He again saw appellee on October 20, 1983. Dr. Wiggins testified that appellee's responses to various physical tests indicated that appellee was exaggerating the pain in his back; that he found no objective evidence of any injury during his examinations of appellee; and that there was no disability as a result of the 1983 accident.

I.

THE LOWER COURT ERRED IN FAILING TO GRANT A MISTRIAL UPON THE INTRODUCTION OF EVIDENCE OF PAYMENTS MADE BY THE APPELLANT TO THE APPELLEE.
Appellant contends that the lower court erred in denying its motion for a mistrial after the appellee testified on direct examination as follows:
Q. How much was Dr. Wiggins' bills for all those times he treated you and everything, as best you can recall?
* * * * * *
A. $1,170.
* * * * * *
Q. Jerry Lee's paid that one, right?
A. Yes, sir.
Rule 409, Miss. Rules of Evidence, states as follows:
Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury *295 is not admissible to prove liability for the injury.
The lower court sustained the objection of appellant to the question and answer, and instructed the jury to disregard them and any reference to such payments by the appellant. Further, the lower court polled the jury to insure that his instruction was understood by the jurors.
Jurors are presumed to follow the trial judge's instructions. Shoemaker v. State, 502 So.2d 1193 (Miss. 1987); Gray v. State, 472 So.2d 409 (Miss. 1985); Evans v. State, 422 So.2d 737 (Miss. 1982); Ratliff v. State, 317 So.2d 403 (Miss. 1975); Clanton v. State, 279 So.2d 599 (Miss. 1973).
Lawyers must learn that law suits are tried by rules and the law. The next case with different facts and posture may be reversed and remanded in spite of the trial judge's prompt action in trying to rectify the error committed by appellee's attorney. However, we do not here hold the error to be reversible.

II.

THE LOWER COURT ERRED IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT.

III.

THE LOWER COURT ERRED IN FAILING TO GRANT A NEW TRIAL OR ORDER A REMITTITUR IN THAT THE VERDICT IS A RESULT OF PREJUDICE AND UNSUPPORTED BY THE EVIDENCE.
The owner or operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition and, if the operator is aware of a dangerous condition, which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition. Waller v. Dixieland Food Stores, Inc., 492 So.2d 283 (Miss. 1986); Wilson v. Allday, 487 So.2d 793 (Miss. 1986); Down v. Corder, 377 So.2d 603 (Miss. 1979); J.C. Penney Co. v. Sumrall, 318 So.2d 829 (Miss. 1975). The owner or occupant is not an insurer against all injuries. Kroger, Inc. v. Ware, 512 So.2d 1281 (Miss. 1987); First National Bank of Vicksburg v. Cutrer, 214 So.2d 465 (Miss. 1968); Daniels v. Morgan & Lindsey, Inc., 198 So.2d 579 (Miss. 1967).
When a dangerous condition on the premises is caused by the operator's own negligence, no knowledge of its existence need be shown. Waller, supra; Douglas v. Great Atlantic & Pacific Tea Co., 405 So.2d 107 (Miss. 1981); Miller's of Jackson, Meadowbrook Road, Inc. v. Newell, 341 So.2d 101 (Miss. 1977); Miss. Winn-Dixie Supermarkets, Inc. v. Hughes, 247 Miss. 575, 156 So.2d 734 (1963). When a dangerous condition on the premises or floor is caused by a third person unconnected with the store operation, the burden is upon the plaintiff to show that the operator had actual or constructive knowledge of its presence. Waller, supra.
In the present case, there is absolutely no evidence indicating that the "Pine Power" spill was due to any act or conduct of the manager or employees of appellant. Therefore, the burden was upon appellee to prove by a preponderance of the evidence that appellant had either actual or constructive notice of the dangerous wet condition on the floor in the beverage aisle. Helveston v. Gibson Products Co. of Hattiesburg, Inc., 192 So.2d 389 (Miss. 1966). Further, there was no evidence introduced at trial that the manager of appellant's store or any of its employees had knowledge of the spilled liquid.
The only evidence which appellee could muster as to length of time the "Pine Power" puddle had been on the floor was that the puddle appeared dirty and had shopping cart tracks and footprints through it. Such was the testimony of appellee, and Eddie Hickson, his co-worker. To the contrary, Tommy Milstead, an employee of appellant, positively testified that he had walked down the beverage aisle across the site of the accident within one to two minutes before appellee, and that there was no puddle on the floor at that time. He arrived at the scene after appellee fell *296 and saw Eddie Hickson helping appellee to his feet.
After carefully reviewing the record, we are of the opinion that there is no evidence of negligence on the part of appellant to establish liability against it. "There must be some evidence of negligence given a jury before it can determine that a defendant is guilty of negligence." Kroger, Inc., supra, at 1282; J.C. Penney Co., supra, at 832. Therefore, appellee failed to establish his burden of proof by a preponderance of the evidence, and the judgment of the lower court must be reversed and judgment entered here for appellant.
REVERSED AND RENDERED.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.