# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00889-COA

**TERI KECKLEY**                                                                           **APPELLANT**

**v.**

**ESTES EQUIPMENT COMPANY, INC. AND**                           **APPELLEES**
**PILOT TRAVEL CENTERS, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/2017 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES M. MERKEL JR. |
| | EDWARD P. CONNELL JR. |
| ATTORNEYS FOR APPELLEES: | JOHN E. WADE JR. |
| | JOSEPH A. SCLAFANI |
| | DAN W. WEBB |
| | PAUL N. JENKINS JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., FAIR AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1. Teri Keckley was injured when she tripped and fell outside of the "Flying J" convenience store in Pearl. Keckley alleges that she tripped on a piece of yellow caution tape that was lying flat on the ground across a sidewalk. She claims that as she stepped over the tape, a sudden "gust of wind" blew the tape off the ground, creating a "tripwire." Keckley testified that after her fall she realized that the tape was tied to a pole on one side of the sidewalk and a brick pillar on the other. Prior to her fall, she did not perceive that the tape was attached to anything.

¶2.     Keckley sued the Flying J's owner, Pilot Travel Centers LLC (Pilot), and Estes Equipment Company (Estes), which had recently completed a construction project outside the convenience store.  She alleged that Pilot and Estes failed to maintain the premises in a reasonably safe condition and failed to warn her of a dangerous condition.  The circuit court held as a matter of law that the caution tape was not an unreasonably dangerous condition.  Therefore, the circuit court granted summary judgment in favor of Pilot and Estes.

¶3.     For the reasons discussed below, we hold that genuine issues of material fact remain and that neither Pilot nor Estes is entitled to judgment as a matter of law.  Therefore, we reverse and remand for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

¶4.     Pilot hired Estes to install an underground storage tank at Pilot's Flying J gas station and convenience store on Highway 80 in Pearl.  Estes broke concrete near the diesel island closest to the store and dug a large hole for the storage tank.  Estes also broke concrete to create an "electrical conduit" or "trench" to run electrical lines to the tank.  Estes installed the tank underground and its electrical subcontractor installed the electrical lines on or before April 1, 2011.  On or around April 1, Estes set up a barricade of orange barrels and yellow caution tape around the construction area.  On April 2, the concrete subcontractor, Denco LLC, poured concrete over certain areas of the excavation and finished construction, including the electrical conduit.  Denco finished its work and left the site on April 2, leaving the barrels and caution tape as it had found them.  The barrels and tape were to remain in

2

place for some period of time to allow the concrete to cure.

¶5.     On April 15, Keckley, a truck driver, stopped at the Flying J. She was on her way to Ruston, Louisiana, to deliver a load. She parked outside the fuel islands, exited her truck, and walked toward the convenience store. As she approached the store, two entrances were ahead of her. A concrete sidewalk led to the front of the building, and a "breezeway" to her right led into the store. Keckley saw "seven or more" people coming out through the breezeway, and "they were all carrying stuff like oil, hot dogs, drinks," etc. Keckley thought that if she tried to enter through the breezeway, she would have had to wait for all those people "to clear before [she] could get in." Keckley "was in a very big hurry," so she decided to take the sidewalk to the front of the building rather than the breezeway.

¶6.     As Keckley approached the sidewalk, she noticed an approximately thirty-foot piece of yellow caution tape "laying flat on the ground" all the way across the sidewalk. The tape appeared to be "loose" and did not appear to be attached to anything. Keckley thought it was "confusing that it would be laying flat on the ground like that, so [she] made an extra wide step [over the tape] to be extra cautious." When she did, a sudden "gust of wind just kind of blew up." The wind blew the tape off the ground, and it "functioned like" a "tripwire," catching Keckley's right foot and causing her to fall forward onto her knees. After she fell, Keckley realized that the tape was tied to a pole on one side of the sidewalk and was also tied to a brick pillar on the other side of the sidewalk.

¶7.     A customer exiting the store saw Keckley fall and helped her up. He then helped her

3

sit down on the edge of a raised flower bed nearby. Keckley sat on the flower bed for twenty or thirty minutes. She called her supervisor to let him know that she had been injured and would be late getting to Ruston. Her supervisor told her to make sure that she was okay before she got back in her truck.

¶8. Keckley eventually went inside the store and spoke to the manager on duty, Mario Garcia. Keckley testified that Garcia "apologized multiple times about the construction stuff everywhere." According to Keckley, Garcia said that Pilot had "call[ed] the construction company several times trying to get them to come out [to the store] and clean this mess up," but the construction company would not return Pilot's calls or come back "to clean this mess up." Keckley filled out a form to report the accident, but she initially declined Garcia's offer to call an ambulance. After about an hour, she still did not feel well enough to drive, so she asked Garcia to call an ambulance.

¶9. Keckley testified that when the ambulance arrived, they could not provide any treatment or diagnosis without taking her to a hospital. She did not want to go to the hospital because she still needed to deliver her load in Ruston. Keckley declined to go to the hospital, returned to her truck, and continued on to Ruston. Keckley testified that she had to stop every thirty or forty minutes because of the pain in her knees, but she eventually made it to Ruston. When she arrived in Ruston, she was unable to help unload her truck. Keckley alleges that she suffered serious injuries to her knees, neck, back, hands and wrists as a result of her fall at the Pilot. She alleges that these injuries required several surgeries and caused

4

severe mental and emotional stress.

¶10.    In February 2014, Keckley filed suit against Pilot, Estes, and Denco in the Rankin County Circuit Court.  She alleged that the caution tape she tripped over was a dangerous condition and that Pilot, Estes, and Denco breached their duty to keep the premises in a reasonably safe condition.  She sought damages for, inter alia, past and future medical expenses, pain and suffering, mental and emotional stress, and lost wages.  The defendants answered and denied liability, and Pilot filed a cross-claim against Estes for indemnification and/or contribution.  Estes denied liability on Pilot's cross-claim.[1]

¶11.    In March 2016, Denco filed a motion for summary judgment.  In response, Keckley agreed that there was no evidence of fault on the part of Denco and that Denco was entitled to summary judgment.  Accordingly, the circuit court granted summary judgment in favor of Denco and dismissed Keckley's claims against Denco with prejudice.

¶12.    Estes and Pilot subsequently filed separate motions for summary judgment.  Estes argued that the caution tape was not an "'unreasonably dangerous condition' that the [d]efendants knew or should have known about" and that Keckley's own decision to step over the tape, rather than walking around the tape and entering through the breezeway, was "the proximate cause of her injury."  Pilot advanced similar arguments and also argued that

[1] The summary judgment record includes conflicting testimony about whether Pilot or Estes would have been responsible for the dangerous condition as alleged in Keckley's complaint.  Neither Pilot nor Estes addressed this issue in their motions for summary judgment, and the issue is not before us on appeal.

Keckley became "a licensee, if not a trespasser," when she crossed over the caution tape; that Pilot had no "duty to warn" because the caution tape was in plain view; and that there was no evidence that Pilot caused or had actual constructive notice of the allegedly dangerous condition. In response, Keckley argued that she remained an invitee, not a licensee, at all times; that, apart from any duty to warn, Pilot had a duty to keep the premises reasonably safe; and that genuine issues of material fact precluded summary judgment on the remaining grounds raised by the defendants.

¶13.   The circuit court granted summary judgment in favor of both Estes and Pilot, ruling as follows:

> Keckley must establish that an unreasonably dangerous condition existed in order to maintain a premises liability action against Pilot and Estes. . . . [T]his [c]ourt finds that the open and obvious yellow caution tape at issue is not an unreasonably dangerous condition as a matter of law. Therefore, without the presence of an unreasonably dangerous condition, there can be no premises liability claim. Moreover, as this [c]ourt has held as a matter of law that the open and obvious condition complained [of] by Keckley was not an unreasonably dangerous condition, this [c]ourt need not consider the other arguments raised by the [d]efendants.

(Citations omitted).  Keckley filed a timely notice of appeal.

**ANALYSIS**

¶14.   "We review the grant . . . of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quotation marks omitted).  Our review is not limited to the specific grounds on which the circuit court granted

summary judgment. Rather, we review the record de novo and may consider any grounds that the moving party raised in the circuit court. *See Brocato v. Miss. Publishers Corp.*, 503 So. 2d 241, 244 (Miss. 1987); *Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 526 (¶31) (Miss. Ct. App. 2017).

¶15. Summary judgment "shall be rendered" if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). The non-moving party "may not rest upon the mere allegations or denials of his pleadings," but must respond with competent evidence of "specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him." M.R.C.P. 56(e). "The movant bears the burden of *persuading* the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). However, "summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Karpinsky*, 109 So. 3d at 89 (¶11) (quotation marks omitted).

¶16. This case involves well-settled rules of premises liability law. The "operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises

7

in a reasonably safe condition and, if the operator is aware of a dangerous condition, which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition." *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988). "When a dangerous condition on the premises is caused by the operator's own negligence, no knowledge of its existence need be shown." *Id.* "When a dangerous condition on the premises . . . is caused by a third person unconnected with the store operation, the burden is upon the plaintiff to show that the operator had actual or constructive knowledge of its presence." *Id.* The operator has "no duty to *warn*" an invitee of dangers that are "open and obvious." *Mayfield v. The Hairbender*, 903 So. 2d 733, 738 (¶21) (Miss. 2005) (emphasis added). However, that a condition is "open and obvious" is not a defense to an operator's "alleged negligence in allowing the hazard to remain" on the premises. *Id.* at 739 (¶27). Nor does it "eliminate the [operator's] duty to maintain the premises in a reasonably safe condition." *Id.*

¶17. With these rules in mind, we address each of the grounds on which Estes and Pilot claim that they are entitled to summary judgment. The defendants argue that they are entitled to summary judgment because (1) the caution tape is not an unreasonably dangerous condition and (2) Keckley's decision to attempt to step over the tape was the sole proximate cause of her injury. In addition, Pilot argues that it is entitled to summary judgment because (3) it had "no duty to warn" of the caution tape, which was in plain view; (4) Keckley was a license, not an invitee, once she stepped over the tape; and (5) there was no evidence that

Pilot created or had actual or constructive knowledge of the allegedly dangerous condition. We address these five issues in turn.

### I.     Dangerous Condition

¶18.     Regardless of the plaintiff's precise theory, "[i]n every premises-liability case, the plaintiff must show that a dangerous condition exists." *McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1012 (¶13) (Miss. Ct. App. 2010); *accord Patterson v. Mi Toro Mexican Inc.*, No. 2017-CA-01113-COA, 2018 WL 3434330, at *2 (¶7) (Miss. Ct. App. July 17, 2018) (collecting cases).  Whether a dangerous condition exists may be a question of fact for the jury. *See Vivians v. Baptist Healthplex*, 234 So. 3d 304, 309 (¶21) (Miss. 2017).

¶19.     Estes and Pilot argue that there is no genuine issue of material fact and that—as a matter of law—the yellow caution tape was not a dangerous condition.  The defendants argue that the tape belongs to the class of "normally encountered dangers" that customers must expect to find on the premises of a business.  "Mississippi has long recognized that normally encountered dangers such as curves, sidewalks, and steps are not hazardous conditions. Often such pathways contain cracks and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects." *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1104 (¶14) (Miss. Ct. App. 2016) (quoting *Knight v. Picayune Tire Servs. Inc.*, 78 So. 3d 356, 359 (¶9) (Miss. Ct. App. 2011)).

¶20.     The defendants further contend that this case is analogous to *Smith v. Federal Cleaning Contractors Inc.*, 126 F. App'x 672 (5th Cir. 2005).  In *Smith*, the plaintiff tripped

9

over a hose near the entrance to Northpark Mall in Ridgeland. *Id.* at 673. The plaintiff noticed the hose before she tripped over it, as it was in plain view and was being used by a contractor. *Id.* In an unpublished opinion, the Fifth Circuit held that the hose was not an "unreasonably dangerous condition." *Id.* at 674. The court reasoned that there was "no difference between a hose laying outside a shopping mall and display stands, hand trucks, raised door thresholds, curbs, and steps, all of which have been held not to be unreasonably dangerous." *Id.* The defendants argue that bright yellow caution tape is—like a hose in a mall parking lot—a common feature routinely encountered on a business premises.

¶21. We would agree with the defendants' argument if Keckley alleged that she had been injured by ordinary caution tape that was strung three or four feet off the ground for the purpose of limiting customers' access to an area of the premises. However, that is not what Keckley alleges she encountered. She alleges that she approached a piece of caution tape lying flat on the ground that appeared to be "loose" and did not appear to be tied to anything. Nor did the tape appear to demarcate an active construction area or some other danger. Keckley further alleges that a sudden gust of wind blew the tape just far enough off the ground to catch her foot and cause her to fall. According to Keckley, she then realized that the tape was tied to a pole on one side of the sidewalk and a brick pillar on the other side. She claims that although the caution tape looked as though it was "loose" and had been discarded, the sudden wind gust caused it to function as a "tripwire." Keckley clearly testified that she tripped on this "tripwire," not the curb a few feet away. A customer does

10

not expect to encounter tripwires on a business premises. A reasonable jury could find that a tripwire is a dangerous condition.

¶22. The facts of this case, at least as described by Keckley, are more analogous *Cox v. Wal-Mart Stores East L.P.*, 755 F.3d 231 (5th Cir. 2014). Cox fell and sustained injuries when she tripped on the threshold of an automatic sliding door at a Wal-Mart. *Id.* at 232. She alleged that threshold "rocked" and rose up slightly (about ½") whenever a customer entered because the threshold was not secured tightly to the ground. *Id.* Wal-Mart denied that the threshold "rocked," *id.*, but argued that, even if it did, it was in that class of "'usual' or 'expected' dangers that cannot be unreasonably dangerous as a matter of law." *Id.* at 233-34. The Fifth Circuit rejected Wal-Mart's argument, reasoning that the case did "not involve a known, permanent, or visible condition, but an alleged defect that caused the threshold to unexpectedly move up and down." *Id.* at 235. The court further reasoned that "[a]lthough the defect alleged in Cox's complaint is a minor defect, the hidden and surprising nature of the defect could remove it from the 'normally encountered dangers' patrons expect to encounter when crossing a threshold." *Id.* The court emphasized that, at the summary judgment stage, it was required to "accept Cox's allegation that the threshold . . . suddenly rose up one-half inch when Cox stepped on it." *Id.* The court concluded that "[t]he fact that the alleged defective condition changed suddenly and without warning—unlike cracked or uneven concrete, or visible changes in texture and elevation—is sufficient for a reasonable jury to conclude that it creates an unreasonable or unusually dangerous condition." *Id.*

11

¶23. According to Keckley's testimony, the caution tape in this case is similar to the defective threshold in *Cox*. Keckley testified that the tape suddenly, unexpectedly, and without warning rose up slightly and caused her to trip and fall. The tape appeared to have been discarded and was lying flat on the ground. However, according to Keckley, the tape was actually secured on either side of the sidewalk, creating a "tripwire" during a sudden gust of wind. The caution tape itself was not "hidden." But neither was the door threshold in *Cox*. According to Keckley's testimony, the tripwire-like effect of the caution tape was "hidden and surprising"—just like the unexpected "rocking" of the door threshold in *Cox*. *Id.* Like the Fifth Circuit in *Cox*, we emphasize that on a motion for summary judgment, we must accept the plaintiff's sworn testimony as true. *Id.* And we hold that "[t]he fact that the alleged defective condition changed suddenly and without warning . . . is sufficient for a reasonable jury to conclude that it creates an unreasonable or unusually dangerous condition." *Id.*

## II. Proximate Cause

¶24. Estes and Pilot also argue that Keckley's decision to step over the yellow caution tape was the sole proximate cause of her injury as a matter of law. They argue that Keckley should have entered the convenience store through the breezeway rather than stepping over the caution tape. We disagree.

¶25. The manager on duty, Mario Garcia, and Pilot's Rule 30(b)(6) witness[2] testified that

---

[2] *See* M.R.C.P. 30(b)(6).

12

the area where Keckley fell was a common and open walkway for the store's customers. In addition, Estes's project manager, Rodney Beasley, and a Denco employee, Tony Robinson, testified that the area where Keckley fell was not part of their work area. Beasley testified that the area where Keckley fell was "not part of the construction zone at all," and he agreed that there was no reason for caution tape to have been across the sidewalk where she fell. Keckley likewise testified that the caution tape did not appear to demarcate a work area. On the evidence presented, a jury could find that Keckley simply stepped over what appeared to be a piece of garbage along the path to an entrance that was open and in common use by customers. On the summary judgment record, we cannot say, as a matter of law, that Keckley's decision to use one open entrance rather than another was the sole proximate cause of her injury.

### III. Duty to Warn

¶26. Citing *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994), Pilot argues that it had "no duty to warn of the yellow caution tape" because Keckley admits that she saw the tape, which "was in plain view, and was not hidden." However, we agree with Keckley that this is not a basis for summary judgment.

¶27. Under Mississippi law, "an invitee may not recover for failure to warn of an open and obvious danger." *Mayfield*, 903 So. 2d at 736 (¶12) (quoting *Vaughn v. Ambrisino*, 883 So. 2d 1167, 1171 (¶12) (Miss. 2004)). However, our Supreme Court has held that a landowner owes an invitee two "separate" duties: "(1) to keep the premises reasonably safe, and (2) to

13

warn of hidden dangers." *Id.* at 738 (¶20). "The breach of either duty supports a claim of negligence. Each must be separately analyzed." *Id.* In general, the fact that a danger was "open and obvious" to an invitee is *not* a "complete bar to recovery" when the invitee alleges that the landowner has breached its primary duty "to maintain its premises in a reasonably safe condition." *Id.* at 739 (¶28).

¶28. On appeal, Keckley emphasizes that her primary claim is that Pilot failed to maintain the premises in a reasonably safe condition—not that it failed to warn her about the caution tape. Her primary claim is that the alleged "hazard could have been eliminated simply by retrieving and placing the discarded and abandoned material in a trash can rather than allowing it to lay on the ground in front of the store's entrance." That claim, she argues, is not affected by the openness or obviousness of the caution tape. In addition, Keckley argues that the question whether the tape was an open and obvious danger raises genuine issues of material fact.

¶29. We agree with Keckley in both respects. First, even if we were to assume that the danger posed by the caution tape was open and obvious, that would not be a "complete bar to recovery" on Keckley's claim that Pilot failed to maintain the premises in a reasonably safe condition. *Mayfield*, 903 So. 2d at 739 (¶28). Second, a failure to warn claim is barred as a matter of law only if the *danger* is open and obvious. *Id.* at 735-36 (¶¶11-14). Here, as discussed above, Keckley testified that the caution tape was lying flat on the ground and appeared to be innocuous. According to Keckley, its danger as a "tripwire" was not

14

apparent. Thus, the fact that Keckley saw the caution tape does not bar her claim.

### IV.    Keckley's Status as an Invitee or Licensee

¶30.    Pilot next argues that Keckley became a "licensee, if not a trespasser," when she decided to step over the caution tape. Keckley contends that she remained an "invitee" at all times.

¶31.    In a premises liability case, the landowner's duty to the injured person depends on whether the person was an invitee, licensee, or trespasser at the time of the injury. *Albert v. Scott's Truck Plaza Inc.*, 978 So. 2d 1264, 1266 (Miss. 2008). "[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 762-63 (Miss. 1989). In general, a customer on a business premises at the invitation of the business is an invitee. *See Sears, Roebuck & Co. v. Burke*, 208 Miss. 306, 320-21, 44 So. 2d 448, 450-51 (1950); *Thomas v. Smith*, 786 So. 2d 418, 420 (¶6) (Miss. Ct. App. 2001). "On the other hand, a licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner." *Clark*, 538 So. 2d at 763. Finally, "a trespasser is one who enters another's property for his own purposes, pleasure or convenience without permission or inducement." *Handy v. Nejam*, 111 So. 3d 610, 614 (¶12) (Miss. 2013) (quotation marks omitted). "If the circumstances surrounding a person's entry onto or presence upon property are in dispute, then the determination of which status a particular plaintiff holds can be a jury question."

15

*Payne v. Rain Forest Nurseries Inc.*, 540 So. 2d 35, 37 (Miss. 1989) (quotation marks omitted).

¶32.    Pilot's allegation that Keckley became a licensee or a trespasser is potentially important because a landowner owes a lesser duty to a licensee or a trespasser than to an invitee. "Landowners owe licensees and trespassers the same duty, specifically, to refrain from willfully or wantonly injuring them." *Massey v. Tingle*, 867 So. 2d 235, 239 (¶14) (Miss. 2004).

¶33.    Pilot cites *Leffler v. Sharp*, 891 So. 2d 152 (Miss. 2004), for the proposition that "[a]n invitee who 'goes beyond the bounds of his invitation . . . loses the status of invitee and the rights which accompany that state.'" *Id.* at 157 (¶15) (quoting *Payne*, 540 So. 2d at 38)). In *Leffler*, after a long night of drinking, a bar patron climbed through a small window to the roof of the bar before he fell through the roof and was injured. *See id.* at 154 (¶¶2-3). The patron argued that even on the rooftop he remained an invitee. However, the Supreme Court held that he became a trespasser when he pulled himself onto the roof without the bar's invitation or permission. *See id.* at 157-60 (¶¶15-24).

¶34.    Pilot likens Keckley to the bar patron in *Leffler*. Pilot argues that Keckley exceeded the scope of her invitation to the store because "the yellow caution tape indicated an area that was closed to the public." However, we cannot agree with Pilot that it was entitled to judgment as a matter of law on this basis. As discussed above (*see supra* ¶25), multiple witnesses testified that the walkway was open and in use by Pilot's customers and that the

16

area where Keckley fell was not part of the construction area. There is substantial evidence that Keckley was justified in believing that the sidewalk was open to customers. The present record does not support Pilot's claim that Keckley was a licensee or trespasser. If anything, this is a disputed issue of material fact for trial, not a basis for summary judgment. *See* M.R.C.P. 56(c).

### V. Pilot's Knowledge of the Condition

¶35. Pilot also argues that there is no evidence that it caused or had actual or constructive knowledge of the dangerous condition.[3] However, we conclude that there are genuine issues of material fact with respect to this issue as well. Keckley testified as follows regarding her conversation with Pilot's manager on duty, Mario Garcia:

Q. Do you know how long the yellow tape was on the ground on April 15th?

A. Only what I was told.

Q. What were you told?

A. Several days.

Q. Who told you that?

A. Mario, the manager, co-manager at Pilot.

---

[3] *See Jerry Lee's Grocery*, 528 So. 2d at 295 ("When a dangerous condition on the premises is caused by the operator's own negligence, no knowledge of its existence need be shown. When a dangerous condition on the premises or floor is caused by a third person unconnected with the store operation, the burden is upon the plaintiff to show that the operator had actual or constructive knowledge of its presence." (citations omitted)).

. . . .

> Q. Do you have any information that would show that Pilot knew or should have known that the yellow tape was on the ground?
>
> A. Yes.
>
> Q. What is that information?
>
> A. Mario, we discussed it. Like I said before, he apologized for the mess. That's what he referred to it was a mess, that they had been trying to contact the construction company. He didn't specify or I don't recall him specifying which construction company by a particular name. . . .

¶36. Thus, according to Keckley, Garcia admitted that he was aware of the allegedly dangerous condition. Garcia testified in his deposition that he did not see "a piece of caution tape flapping around" when he walked the premises prior to Keckley's fall. However, Garcia's testimony only raises a genuine issue of material fact. When we review an order granting summary judgment, "[i]t is not our duty to weigh the competing evidence; it is our duty to determine if there is conflicting evidence for trial." *Estate of Johnson v. Chatelain ex rel. Chatelain*, 943 So. 2d 684, 687 (¶8) (Miss. 2006). Therefore, Pilot is not entitled to summary judgment on this basis.

## CONCLUSION

¶37. For the foregoing reasons, we conclude that there are genuine issues of material fact. On the record before us, neither Pilot nor Estes is entitled to judgment as a matter of law. Accordingly, the case is reversed and remanded to the circuit court for further proceedings consistent with this opinion.

¶38.    **REVERSED AND REMANDED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.  IRVING, P.J., AND CARLTON, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**