# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00566-COA

**IENRY LOVING**                                                                 **APPELLANT**

**v.**

**MS EYE CARE, P.A. D/B/A LOUISVILLE EYE CARE**                  **APPELLEE**

DATE OF JUDGMENT:            04/12/2023
TRIAL JUDGE:                HON. JOSEPH H. LOPER JR.
COURT FROM WHICH APPEALED:  WINSTON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    LAMPTON O'NEAL WILLIAMS JR.
                            CORY MORRIS WILLIAMS
ATTORNEYS FOR APPELLEE:     ROBERT P. THOMPSON
                            LAURA WALSH GIVENS
NATURE OF THE CASE:         CIVIL - PERSONAL INJURY
DISPOSITION:                AFFIRMED - 03/12/2024
MOTION FOR REHEARING FILED:

### BEFORE BARNES, C.J., GREENLEE AND McDONALD, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     In 2021, Ienry Loving filed a lawsuit in the Winston Count Circuit Court against MS Eye Care, P.A. d/b/a Louisville Eye Care (MS Eye Care).  The circuit court granted MS Eye Care's motion for summary judgment, and Loving appealed.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On April 13, 2021, Loving filed a complaint against MS Eye Care, John Does 1-5, and XYZ Corporations 1-5.  The complaint alleged that on June 24, 2019, Loving went to MS Eye Care for an eye examination.  While being positioned for the examination, a chair rolled backward and caused Loving to fall.  Loving claimed that the defendants were negligent in

maintaining the premises, and he further alleged that the defendants knew or should have known "that the premises, including the chair . . . , created hazards to business customers . . . ." Loving specifically claimed that the defendants

(a)     Negligently fail[ed] to provide a safe chair without rollers . . . ;

(b)     Negligently fail[ed] to hold the chair in position so it would not roll . . . ;

(c)     Negligently plac[ed] or allow[ed] to be placed a defective and extremely dangerous chair on their premises . . . ;

(d)     Negligently fail[ed] to remove the defective and extremely dangerous chair from the premises . . . ;

(e)     Negligently fail[ed] to supervise and oversee the premises and chairs therein as to warn [him] of the defective and extremely dangerous condition of the chair . . . ;

(f)     Fail[ed] to warn customers/patrons of the business (in general) and . . . Loving (in particular) of the unreasonably dangerous condition caused by the inadequate and/or defective chair;

(g)     [Were generally] guilty of any and all other acts of negligence which may be discovered at the trial . . . as having been the proximate cause of this incident; and

(h)     Generally fail[ed] to exercise the required degree of care commensurate with the existing situation.

¶3.     In his deposition, Loving indicated that he was obese and described the incident as follows:

> They put me in the first room, in the first examiner chair. And then after I got through in that room, they carried me to the next room where the roll[ing] chair was at. They asked me to take a seat in front of the eye examiner machine. I properly seated myself down carefully . . . in the examiner chair. And the eye examiner . . . asked me to look down into the eye machine where the red laser light was shining in my eyes. I attempted to look down into the

2

machine, and . . . I come back up and I told her, I said, 'Ma'am, I'm not able to look down into the machine . . . can you raise it up a little bit?' And she said, 'It doesn't raise up. Just try your best . . . to get your eyes where you can see.' So as I bent myself down as far as I could go to look into . . . the machine, that's when the chair with the rollers rolled from under me.

Loving admitted that he noticed that the chair had wheels when he first sat down. He stated that the chair was "improper" because it had wheels, and he noted that the wheels did not have locks. But Loving stated that he did not notice any defects with the chair "other than it has rollers, which is improper for an eye exam."

¶4. After filing an answer to the complaint, MS Eye Care filed a motion for summary judgment and a memorandum in support of the motion. Loving filed a response in opposition and attached his own affidavit. MS Eye Care then filed a reply.

¶5. In April 2023, the circuit court granted MS Eye Care's motion for summary judgment and dismissed the case with prejudice. Then Loving appealed.

**STANDARD OF REVIEW**

¶6. The grant of summary judgment is reviewed de novo, viewing the evidence in the light most favorable to the non-moving party. *Keckley v. Estes Equipment Co.*, 276 So. 3d 1230, 1235 (¶14) (Miss. Ct. App. 2018). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Still, "the non-moving party 'may not rest upon the mere allegations or denials of his pleadings, but by affidavits or as otherwise provided by Rule 56, must set forth specific facts showing that there is a genuine

3

issue for trial.'" *Hood v. A & A Excavating Contractors Inc.*, 338 So. 3d 145, 148 (¶6) (Miss. Ct. App. 2022) (quoting M.R.C.P. 56(e)).

## DISCUSSION

¶7.     We must decide whether the circuit court erred by granting MS Eye Care's motion for summary judgment.  On appeal, Loving claims in his statement of the issues that MS Eye Care "created a dangerous condition," and therefore a genuine issue for trial existed.

¶8.     In this case, Loving was an invitee.  Under Mississippi law, "[t]he owner or operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition and, if the operator is aware of a dangerous condition, which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition." *Goff v. Coe*, 933 So. 2d 992, 993-94 (¶4) (Miss. Ct. App. 2006) (quoting *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988)).  "When a dangerous condition is caused by the premises owner's or business operator's own negligence, it is not required that a plaintiff show that the owner/operator had knowledge of such condition." *Id.*

¶9.     The circuit court found that the facts in this case were indistinguishable from the facts in *Goff*—another case involving a patient who fell from a rolling chair while at an eye clinic. In *Goff*, the plaintiff "was provided a stool to sit on [during] the preexamination screening." *Id*. at 994 (¶7).  "[T]he stool . . . had rollers on the bottom, and was otherwise an ordinary stool." *Id*.  The plaintiff had difficulty sitting on the stool due to her short stature and obesity. *Id*.  Despite this difficulty, "no one warned [the plaintiff] about sitting on the stool

4

or assisted her in sitting on the stool." *Id*. The plaintiff alleged that the stool "scooted" out from underneath her "when she attempted to sit on it, allegedly causing her to fall to the floor and receive injuries . . . ." *Id*. This Court affirmed the grant of summary judgment in favor of the eye examiner and eye clinic. *Id*. Specifically, this Court found that "[t]here was no evidence that the stool was defective or unreasonably dangerous." *Id*. "Nor was there any evidence that some other unreasonably dangerous condition existed which caused the stool to move from underneath [the plaintiff] when she attempted to sit on it." *Id*.

¶10.     Similarly, there was no evidence that the chair in this case was defective or unreasonably dangerous. During his deposition, Loving was asked why the chair was defective, and he responded, "I don't see any defects on the chair, other than it has rollers, which is improper for an eye exam." Like the stool in *Goff*, the chair in this case had wheels, and it was otherwise an ordinary chair. Additionally, Loving was aware that the chair had wheels on it. We have held that "the existence of a dangerous condition cannot be shown merely because an accident occurred." *Trull v. Magnolia Hill LLC*, 171 So. 3d 518, 521 (¶10) (Miss. Ct. App. 2014) (quoting *Penton v. Boss Hoggs Catfish Cabin LLC*, 42 So. 3d 1208, 1210 (¶6) (Miss. Ct. App. 2010)).

¶11.     Loving asserts that this case is analogous to *Keckley*. In *Keckley*, the plaintiff "was injured when she tripped and fell outside of the 'Flying J' convenience store . . . ." *Keckley*, 276 So. 3d at 1233 (¶1). The plaintiff alleged "that she tripped on a piece of yellow caution tape that was lying flat on the ground across a sidewalk." *Id*. "She claim[ed] that as she stepped over the tape, a sudden 'gust of wind' blew the tape off the ground, creating a

5

'tripwire.'" *Id.* Only after she fell did she notice "that the tape was tied to a pole on one side of the sidewalk and a brick pillar on the other." *Id.* Before she fell, "she did not perceive that the tape was attached to anything." *Id.* The circuit court "held as a matter of law that the caution tape was not an unreasonably dangerous condition" and granted summary judgment in favor of the defendants. *Id.* at (¶2). The plaintiff appealed, and the defendants asserted that the caution tape was "a common feature routinely encountered on a business premises." *Id.* at 1237 (¶20). This Court stated, "We would agree with the defendants' argument if Keckley alleged that she had been injured by ordinary caution tape that was strung three or four feet off the ground for the purpose of limiting customers' access to an area of the premises." *Id.* at 1237 (¶21). But "that [was] not what [the plaintiff] allege[d] she encountered." *Id.* This Court held, "A customer does not expect to encounter tripwires on a business premises[, and a] reasonable jury could find that a tripwire is a dangerous condition." *Id.* Ultimately, this Court reversed the circuit court's grant of summary judgment. *Id.* at 1233 (¶3).

¶12. As discussed, Loving was allegedly injured when he fell from an ordinary rolling chair. We find that the facts of this case are more analogous to *Goff*. Loving argues that *Goff* is distinguishable because the plaintiff in *Goff* was attempting to sit when she was injured; he was already seated and fell when he did not receive assistance with the chair. However, we find this argument unpersuasive as to the issue of whether the chair was defective or unreasonably dangerous.

¶13. Loving also relies on *Sims v. Graystone Ophthalmology Associates P.A.*, 757 S.E.2d

6

925 (N.C. Ct. App. 2014), a decision from the North Carolina Court of Appeals, suggesting that he should have received assistance with the rolling chair. In *Sims*, the 86-year-old plaintiff sat on a rolling chair for a vision examination and then fell from the chair. *Id*. at 925-28. Summary judgment was granted in favor of the defendant, and the plaintiff appealed. *Id*. at 926. The North Carolina Court of Appeals noted that the issues to be decided were "whether the chair was a dangerous condition" and "whether [the] defendant was negligent in placing [the] plaintiff on the rolling chair from which she fell." *Id*. at 927. In reversing the grant of summary judgment, the North Carolina Court of Appeals noted that the defendant had assisted the plaintiff with the chair at previous appointments. *Id*. at 927-28. Additionally, the evidence showed that the defendant was aware of the dangers of the rolling chair as there was a prior incident in which a patient fell from a rolling chair. *Id*. at 928. Finally, it was the technician's "usual practice to hold the chair and place her foot on the bottom of the chair while a patient is being seated in order to keep the chair from rolling," but she was facing away from the plaintiff at the time of the fall. *Id*.

¶14. The instant case is distinguishable. Here, MS Eye Care could not possibly have assisted Loving with the chair at previous appointments because Loving stated in his affidavit that this was his first visit to MS Eye Care. Additionally, there was no evidence of the technician's usual practice. Nor was there evidence that MS Eye Care was aware of any danger associated with the chair. Furthermore, this Court noted in *Goff* that the plaintiff had not received any assistance in sitting on the stool, yet the circuit court's grant of summary judgment was affirmed. *Goff*, 933 So. 2d at 994-95 (¶7).

¶15. For these reasons, we find that the circuit court did not err by granting summary judgment in favor of MS Eye Care. Therefore, we affirm.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., NOT PARTICIPATING.**